## STATE v. DAN VAN VLEET.[1]

January 4, 1918.

No 20,692.

**Selection of jury panel — de facto justice of peace — sale of liquor.**

The clerk of the district court drew the panels of the grand and petit jury, for the term of court at which defendant was indicted and tried, in the presence of the sheriff and a person who had been duly elected a justice of the peace, had taken the oath of office, had received from his predecessor the records and files pertaining to the office, who had for a week performed all the duties of the office in both civil and criminal cases, but whose official bond had not been filed. It is *held*:

(1) The person so present at the drawing of the jury panels was a de facto justice of the peace and his official act, in being the proper person to be present at such drawing, under section 9101, G. S. 1913, cannot be questioned by a motion to set aside the indictment or by a challenge' to the petit jury panel.

(2) The instruction relative to the time the offense was committed was proper.

(3) No error was made in receiving evidence as to prior sales and in the instruction limiting the bearing of such evidence.

(4) The evidence is sufficient to sustain the conviction.

Defendant was indicted by the grand jury for the crime of selling intoxicating liquor without a license, tried in the district court for Freeborn county before Catherwood, J., who denied defendant's motion to quash the indictment, and a jury which returned a verdict of guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Moonan & Moonan,* for appellant.

*Lyndon A. Smith,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Norman E. Peterson,* County Attorney, for respondent.

[1]Reported in 165 N. W. 962.

HOLT, J.

Defendant was indicted and convicted for selling a pint of whiskey in a county where sales of intoxicating liquors are prohibited. He appeals from the order denying a new trial.

1. Defendant was bound over to await the action of the grand jury upon the charge for which he was indicted. Hence it may be doubted that the motion, made at the time of his arraignment, to set aside the indictment for irregularity in the drawing of the grand jury, was timely, for he could have raised the same question by interposing a challenge to the array or panel after the grand jurors were sworn and charged and before they retired. Section 9108, G. S. 1913; State v. Greenman, 23 Minn. 209. We need not determine the point now, for by proper interposition of a challenge to the petit jury panel the same alleged fatal irregularity in the drawing of that jury is presented.

Section 9101, G. S. 1913, applicable to the drawing of the panel of the petit jury as well as that of the grand jury for any term of court, provides that the clerk of court, in the presence of the sheriff and a justice of the peace or district judge, shall draw the same from the box containing the names of the jurors duly selected and certified for the year. The panels here in question for the May term of court were drawn by the clerk on April 24, 1917, in the presence of the sheriff and one Lane who assumed to be a justice of the peace. The particular objection is that Lane's official bond was not then filed. The facts are these: The city of Albert Lea has two justices of the peace. At an election held April 3, 1917, Lane was duly elected to fill the office and a certificate of election issued to him. On April 7, he took and filed his oath of office. His predecessor in office, on April 17, turned over the dockets and files in his possession as justice of the peace in and for said city to Lane. From and after that date Lane, as justice of the peace, assumed jurisdiction in criminal and civil matters and took the necessary steps in the determination thereof. The city council of Albert Lea must fix the amount of the official bond of a newly elected justice of the peace, and also furnished the bond, as we understand the record. Prior to April 17, Lane had done everything required of him to properly qualify for the office, and in addition to his election the city council on that date appointed him to the office. However, his official bond

procured by the city was not filed with the city clerk until April 26, 1917. Defendant contends that inasmuch as sections 8239 and 8521, G. S. 1913, forbid a person, elected to a public office, to enter upon his duties as such until the bond required by law is filed and makes it a gross misdemeanor for him to perform the functions of the office with-out having filed such bond, Lane could not be considered a de facto justice of the peace. To this we do not assent. Although a person elected to an office may in the assumption thereof, as well as in the performance of its duties, transgress the law and subject himself to penalties and forfeiture of office, yet it does not follow that the public acts done while so exercising the functions of the office are of no effect and void. We are of opinion that Lane was on April 24, 1917, when present at the drawing of the grand and petit jury panels for the coming May term of court, a de facto justice of the peace. The former justice had surrendered the office to Lane, and the latter had assumed and discharged all the functions thereof for a week prior to the drawing of the jury. State v. McMartin, 42 Minn. 30, 43 N. W. 572; 24 Cyc. 405 and 406; People v. Payment, 109 Mich. 553, 67 N. W. 689; People v. Terry, 108 N. Y. 1, 14 N. E. 815.

The cases of Commonwealth v. Graddy, 4 Metc. (Ky.) 222, and Bruner v. Superior Court, 92 Cal. 239, 28 Pac. 349, cited and relied on by defendant, are not very helpful. They relate to the original selection or authentication of the jury lists and not to the drawing therefrom of the panels for the different terms of court. This was also the case in State v. Schumm, 47 Minn. 373, 50 N. W. 362. In State v. Malloy, 91 S. C. 429, 74 S. E. 988, the state admitted the disqualification of a jury commissioner. Authorities from Louisiana are not in point for the Constitution and statutes of that state differ from ours in respect to the qualification of jury commissioners and the procedure in obtaining juries.

2. The contention of counsel and the testimony undoubtedly furnished the appropriate occasion for the instruction bearing upon the materiality of the time at which the alleged sale had taken place. The instruction was proper.

3. Defendant had been interested in the soft drinks parlor at which this alleged illegal sale was made 4 or 5 weeks prior thereto. He denied

the sale.    On cross-examination he was asked whether he had ever sold whiskey to Sorenson, the prosecuting witness.    Sorenson was called in rebuttal and testified, over defendant's objection, to buying whiskey of defendant on two different occasions before the date of the sale named in the indictment.    This was not impeachment on a collateral issue.    Whether in this soft drinks parlor defendant kept whiskey for sale had an important bearing upon the sale in question.    The time of these other sales was not too remote, having in mind the short period that defendant had been connected with the place.    In the charge the effect of this testimony of former sales was quite clearly and correctly limited.

4. With great earnestness and confidence the able attorney of defendant argues that the evidence does not sustain a conviction.    It is true Sorenson alone testified to the sale and defendant denied it.    Sorenson's reputation was questioned by the state's own witness, Jud Flannigan, and character witnesses vouched for the honesty and integrity of defendant.    But with all this a reading of the record is persuasive that the jury did not go astray.    Sorenson was sober when he met Flannigan and one Peterson early in the forenoon of April 7, 1917.    Flannigan within an hour or two furnished him money, at two different times, one dollar each time.    Sorenson, within a few minutes of receiving the first dollar, met the same parties at a secluded spot in Albert Lea, a few blocks from the soft drinks parlor of defendant, and produced a pint bottle of whiskey which the three joined in consuming.    Thereafter he got the other dollar, went to another place and got another pint bottle of whiskey.    Sorenson became drunk and was arrested about noon, and late in the afternoon the preliminary examination was had.    Sorenson then, as upon the trial, testified to buying the first bottle from defendant at his soft drinks parlor and the second from another man at a different establishment.    He was perfectly sober when the first bottle was bought.    For some years he had had his home in Albert Lea and worked for the city upon its streets.    He was therefore thoroughly familiar with the location of defendant's place of business and knew him.    There is not the slightest suggestion that he harbored any ill-will toward defendant or willingly started or aided the prosecution.    And there seems to have been no opportunity for any one improperly to procure Sorenson to

saddle the crime, which evidently had been committed by some one, up-
on defendant.  The verdict of guilty has been approved by the trial
court, and we see no good reason for disturbing the conviction.

Order affirmed.