## STATE v. HARRY MONROE.[1]

### May 16, 1919.

### No. 21,161.

**Grand larceny — corroborative evidence admissible.**

1. Evidence disclosing a general system practiced by defendant of stealing or receiving stolen automobiles and so disfiguring them as to render identification by the owner difficult or impossible, and then disposing of them on the market, is admissible in corroboration of the inference of guilt arising from the possession and control by him of a recently stolen automobile which, while so in his possession, had been subjected to the systematic treatment given other stolen cars.

**Same — tendency to prove commission of other crimes.**

2. The fact that such evidence tends also to prove defendant guilty of other crimes does not render it objectionable or inadmissible.

**Same — not too remote in time.**

3. On the facts stated in the opinion, the evidence tending to show such system is *held* not too remote in point of time.

**Same — employee not an accomplice.**

4. An employee of defendant, who aided in the operations under the system, whose term of service ended two months prior to the theft of the automobile involved in this prosecution, and who was not shown to have participated therein, was not an accomplice in that transaction, and the trial court properly refused to instruct the jury that it was necessary that his testimony be corroborated.

**Continuance.**

5. A motion for continuance based on the ground of an absent witness is addressed to the discretion of the trial court, and there was no error in denying such motion in this case.

[1]Reported in 172 N. W. 313.

**No prejudicial error.**

6. The record presents no reversible error.

Defendant was indicted by the grand jury of Hennepin county, charged with the crime of grand larceny in the first degree, tried in the district court for that county before Steele, J., and a jury which returned a verdict of guilty as charged in the indictment. From the judgment sentencing him to hard labor at the state prison and from the order denying his motion for a new trial, defendant appealed. Affirmed.

*Ernest S. Cary* and *A. M. Cary,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *William M. Nash,* County Attorney, for respondent.

BROWN, C. J.

Defendant was convicted of stealing an automobile, and appealed from an order denying a new trial.

The assignments of error present five separate questions, only one of which deserves special consideration. The matter of granting or denying a continuance on the motion of defendant rested in the discretion of the trial court, in the exercise of which we discover no error. The point that there was another indictment pending against defendant for the same crime, therefore that no evidence should have been received until the other indictment was shown to have been dismissd or otherwise disposed of, is without merit, and requires no further mention. We discover no misconduct on the part of the county attorney to justify a new trial, and the assignments' of error presenting the point are not sustained. There was no showing that the principal witness for the state, one Morrison, was an accomplice of defendant in this transaction, and the court properly refused to instruct the jury that his testimony was not competent unless corroborated. The main question in the case centers around the contention that the court improperly admitted a large amount of evidence tending, and in fact showing, the participation in or commission of other like crimes by defendant, in violation of the rule stated in State v. Fitchette, 88 Minn. 145, 92 N. W. 527. We turn our attention to that question, passing all others without further comment.

The automobile in question belonged to one Keator, a resident of South Dakota, and he had driven the same from his home to Minneapolis, arriving on August 11, 1918, at about three o'clock in the afternoon. Later in the day and at about seven o'clock in the evening it was driven to the Athletic Club, where it was "parked" in the adjacent street. On leaving the club at about the hour of nine o'clock, the car had disappeared and could not be found; it had been stolen by some one; the state claims by defendant. Two days later and on August 13, 1918, it was delivered by defendant into the possession of one Wattles at his garage on West Forty-Fourth street in the city of Minneapolis, with directions to change the tires and remove the top, and replace it with a new one which defendant brought with him at the time. Wattles complied with the directions, and defendant drove the car away, returning on one or two occasions during the following few days for some minor repairs. He finally left the car at the Wattles garage, with the statement that he had sold it to one Brown of Hopkins. Soon thereafter, on the seventeenth, some six days after the car had been stolen, the police authorities located it at the Wattles garage, and caused a removal thereof to an automobile establishment on Hennepin avenue. In addition to the top and tire changes already referred to, the manufacturer's numbers on the various parts of the machinery had been filed away and new ones put in their places. The owner was called in and after careful examination identified the car as the one that had recently been stolen from him, and it was turned over to him by the authorities. His identification was complete and satisfactory, and neither defendant nor the Hopkins Brown has ever pointed out any error therein, or made any claim of ownership of the car. The fact that defendant was in possession immediately following the theft, and that he delivered the car at the Wattles garage for the alterations and changes referred to, is not in dispute, nor the veracity of Wattles, who testified to the facts, in any way put in issue by the defendant, except by his plea of not guilty. He was not a witness in his own behalf.

From these facts the conclusion is clear, beyond a fair doubt, that the automobile was stolen at the time charged in the indictment. Within two days thereafter it was found in the possession of defendant, who had caused changes in its appearance, for the purpose of rendering identifi-

cation doubtful or impossible. The evidence furnished no explanation of defendant's possession, nor of his act in causing the changed appearance of the car. In that situation the state could have rested its case, and relied for conviction upon the rule that the unexplained possession and control of personal property shown to have been recently stolen is evidence of guilt, and sufficient to justify the conviction of the person so in possession. The rule is well settled in this state and in other jurisdictions. State v. Hoshaw, 89 Minn. 307, 94 N. W. 873; State v. Miller, 45 Minn. 521, 48 N. W. 401; and see note to State v. Brady, 12 L.R.A. (N.S.) at page 211. But the state did not see proper to rest upon that showing, and offered and the court received over defendant's objection and exception further evidence by way of corroboration, all of which is illustrated by that now to be referred to, and tended to show the practice by defendant at about the time of the commission of this crime of a general system of similar crimes.

Defendant had been operating a restaurant and an employment agency and engaged incidentally in the second-hand automobile trade. He employed one Morrison to assist him in the latter industry, and caused him to rent a building on University Avenue Southeast, Minneapolis, to be used as a garage. He informed Morrison of the character of the business to be carried on therein, and the nature of the service to be rendered by him. The character of the business was receiving stolen automobiles, and when changed and altered sufficiently to destroy their identity to put them on the market for sale. Among other duties of his employment Morrison assisted in making the alterations and changes in the automobiles as they were brought in, for which he was to be paid at the rate of $25 a car. His employment commenced in December, 1916, and ended about June 10, 1917. During that time six automobiles were brought to the garage by defendant, and he and Morrison working together subjected them to the treatment of disfigurement by effacing marks of identification, the cars being later sold by defendant.

Morrison was not in the employ of defendant at the time of the theft of the automobile in question, his term of service having terminated about two months prior to that transaction. His employment for the purpose stated and the service rendered in disfiguring stolen automobiles, are not denied by defendant, and though Morrison was equally

culpable with defendant in that business, he was in no way connected with the theft or alteration of the automobile in question, and his evidence, if admissible, was entitled to such weight and credit as the jury deemed consistent with the truth.

The contention of defendant is that the evidence tended to prove the commission of other independent crimes, was an indirect attack upon his character, and therefore inadmissible under the rule stated and applied in the Fitchette case, supra. We do not sustain the point, though the rule invoked is not questioned. It is a well established rule of evidence in criminal prosecutions, and excludes, for illustration, evidence tending to prove various forgeries on the trial of an indictment charging grand larceny, and evidence of different larcenies on the trial of an indictment charging murder, or evidence of any other crime which is distinct and independent in class and character from that on trial. But like other rules of both law and evidence it is not without well defined exceptions under which evidence of other crimes is admissible. In fact the exceptions are as well established as the rule itself. 16 C. J. 587. The exception applicable to the case at bar is stated in State v. Wilson, 72 Minn. 522, 75 N. W. 715, as including evidence of any other crime which is the outgrowth of a system of similar crimes shown to have been engaged in by defendant, for example, a system of successive forgeries, or cheats or swindles of the same general nature. In other words, crimes of whatever character which appear to be members of a disclosed system where the facts as to one tend to prove the commission of another of the same class. In such case the evidence is admissible, not to establish the other crime, but as confirmatory of the evidence tending to show the commission by defendant of the one on trial. State v. Wilson, 72 Minn. 522, 75 N. W. 715; State v. Ames, 90 Minn. 183, 96 N. W. 330; State v. Sederstrom, 99 Minn. 234, 109 N. W. 113; State v. Morgan, 129 La. 154, 55 South. 747; State v. Bailey, 190 Mo. 257, 88 S. W. 733; State v. Othick (Mo.) 184 S. W. 106; Johnson v. State, 148 Ind. 522, 47 N. E. 926; State v. Konzen (Iowa), 171 N. W. 137. There was therefore no error in admitting the evidence complained of, including that tending to show the larceny of the Green automobile. State v. Othick, supra; Patterson v. State, 96 Oh. St. 90, 117 N. E. 169, L.R.A. 1918A, 583. It was not too remote in point of

time. The Morrison evidence disclosed the system. The automobile in question shortly after it had been stolen was found in the possession and control of defendant and then bore conclusive evidence in its disfigurement of the handiwork of that system. From that the jury might well have concluded that the system was still in full operation and that the theft of this automobile was a full grown member thereof, for it had all the characteristics and earmarks of defendant's operations thereunder.

Although the learned trial court may perhaps have inaptly expressed the reasons for the admission of the evidence, as tending to show an "inclination" on the part of defendant to commit crime (State v. Lapage, 57 N. H. 245, 24 Am. Rep. 69), that was not in fact the basis of the ruling. The court made it sufficiently plain both in the ruling and in the charge to the jury that the evidence was admissible only as corroborative of that tending to connect defendant with the crime on trial and for no other purpose. At least we are clear that the jury was in no way misled on the subject.

This covers the case and all that need be said in disposing of the points made in support of the appeal. If the witnesses Wattles and Morrison told the truth, a question for the jury, there is no serious doubt of defendant's guilt, and since the record presents no reversible error the order denying a new trial must be affirmed.

It is so ordered.