## STATE v. ED CLARK.[1]

March 23, 1923.

No. 23,250.

**Conviction for selling liquor sustained.**
1. The evidence is sufficient to sustain defendant's conviction of the charge of selling intoxicating liquor.

**Admissible evidence.**
2. Evidence of other subsequent sales, and of liquor found in possession on subsequent occasions, was properly admitted as showing a general system or plan to commit crimes of like nature to the crime charged.

**Evidence of defendant's connection with place admissible.**
3. There is evidence of defendant's connection with the place where the subsequent sales were made and liquor subsequently found, to warrant reception of the evidence as against him.

**Evidence of bottles and corks admitted.**
4. Evidence that a quantity of bottles and corks were at a subsequent date taken to defendant's home by a drayman, while not of much importance, was properly received.

Defendant was indicted by the grand jury of Olmsted county charged with the crime of selling intoxicating liquor, tried in the district court for that county before Callaghan, J., and a jury which found him guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*William J. Quinn*, for appellant.

*Clifford L. Hilton*, Attorney General, and *James E. Markham*, Assistant Attorney General, for respondent.

HALLAM, J.

Defendant was convicted of the unlawful sale of intoxicating liquor on March 18, 1922. Defendant operated a soft drink estab-

[1]Reported in 192 N. W. 737.

lishment at the Minnesota House in Rochester and it was there the liquor is alleged to have been sold. Two witnesses testified to the sale. Defendant denied it and produced witnesses to prove an alibi. Whether or not defendant sold the liquor was a pure question of fact. The evidence sustains the verdict.

2. Evidence was received of other sales of liquor by defendant and of liquor found in the Minnesota House on several occasions, one as late as July 8, 1922. Defendant claims the evidence as to July 8 was erroneously received, because too remote in time, and because of his evidence that he sold his business at the Minnesota House on March 31 and had no further connection with it.

The occurrence of July 8 was not too remote in time. The state's evidence shows a sale on March 25; a raid on April 1 resulting in discovery of liquor on the premises; another raid on June 3 with the same result. The liquor found on July 8 consisted of eight five-gallon jugs containing moonshine whiskey, concealed in a pit under the floor of the dining room. The pit was covered by loose boards. The floor was covered with linoleum and there was a corner of the linoleum "lapped right over the hole" so that it would turn back to give access to the hole. The events were so connected in time as to tend to show a general system or plan to commit crimes similar to the one charged and to render the evidence admissible as corroborative evidence under the rule of State v. Monroe, 142 Minn. 394, 172 N. W. 313.

3. Defendant strenuously contends that he was not connected with the Minnesota House on July 8. There is evidence of one witness that defendant was at the Minnesota House and sold drinks on July 2 and again on July 8. Defendant undertakes to discredit this witness, but the weight of the testimony was for the jury. The evidence also tends to show that the hole in the floor with its linoleum covering, which were discovered on July 8, showed signs of use for a considerable length of time.

We conclude that it was not error to receive the evidence as to the occurrences of July 8. By parity of reasoning, the evidence as to the occurrences of April 1 and June 3 was properly received.

4. Exception is taken to the reception in evidence of a box containing some corks and empty bottles and a hydrometer, taken from

defendant's home under a search warrant on July 25, 1922. The same articles had previously been taken, by a baggage man or drayman, to the chief of police, and had been examined by him. He submitted them to the county attorney and finally they were taken to defendant's house by the same drayman who brought them to the police station. These exhibits were in this court. Their effect as evidence was not very important, but we think they were properly received. Other assignments of error are made but they do not seem to us to require particular notice. We find no error in the case.

Order affirmed.

DIBELL, J. (dissenting.)

I dissent.

I agree that the evidence sustains the verdict. It is sufficient in my judgment with the testimony as to the three raids of Pat Courtney's place in the Minnesota House and the one of the defendant's home eliminated. Without this testimony, however, the jury had difficulty in agreeing that defendant was guilty of selling to the two detectives on March 18, 1922. After several hours' deliberation it inquired whether it could consider the exhibits found on these raids "as evidence, either direct or circumstantial, in this case," and, on being informed, soon agreed. The evidence of the two detectives, although denied by the defendant, who was supported by a good alibi, was in law ample, but the jurors were not satisfied with its sufficiency in fact.

I cannot agree that the results of the raids of Pat Courtney's place on April 1, June 3 and July 8, and of the one on the defendant's home a few days prior to the trial, which commenced on July 26, were proper to put before the jury, nor that evidence of sales on July 2 and July 8 was admissible.

With my understanding of the record I cannot see that the raids disclose a plan or system within the meaning of that expression in the law of evidence, or disclose facts, such as the presence of liquor, material against the defendant, who was not in possession, on the question of the sale for which he was indicted.

The defendant sold his soft drink place in the Minnesota House to Pat Courtney on March 31, went into the pool hall business, and moved away. This is not denied. The search warrant of April 1 was directed against Courtney, and inferably the two later ones were. The officers were after Courtney and others whom they might find. They got Courtney and some others. Neither they nor anyone else saw the defendant at Courtney's place after March 31, unless it be one witness who claims that he was there July 8 and a week earlier. In my judgment the evidence does not present a general plan or system, any more than does the ordinary case where the defendant is accused of committing a particular crime, and the state gives evidence that he has before or after committed like crimes, or has done acts tending to show himself a lawbreaker in like respects on other occasions, from which the jury is invited to infer that more likely he committed the one under investigation. It is easy to say that a plan or system is shown, and leave it at that; but the claim made in this case will not to my mind stand analysis. The cases of State v. Friedman, 146 Minn. 373, 178 N. W. 895, 184 N. W. 272, and State v. Monroe, 142 Minn. 394, 172 N. W. 313, are typical ones but are without application here. The character of the issue, or the course of the trial, may determine admissibility.

That unlawful sales were made to the same person, or even to other persons, about the same time may sometimes be given in evidence, and evidence of possession of liquors or appliances usual in liquor selling is often competent. State v. Mueller, 38 Minn., 38 N. W. 691; State v. Sederstrom, 99 Minn. 234, 109 N. W. 113; State v. Peterson, 98 Minn. 210, 108 N. W. 6; State v. Lindquist, 110 Minn. 12, 124 N. W. 215; State v. Stoffels, 89 Minn. 205, 94 N. W. 675; State v. Gesell, 137 Minn. 43, 162 N. W. 683; State v. Van Vleet, 139 Minn. 144, 165 N. W. 962. The character of the issue, or the course of the trial, may determine admissibility. Evidence of conduct, if otherwise competent, is not incompetent because it shows the commission of another crime. State v. Madigan, 57 Minn. 425, 59 N. W. 490; 1 Wigmore, Ev. § 215; 1 Jones, Ev. § 143. It is not competent just because it shows another crime of the same character.

There is dubious and uncorrobated testimony of one witness that the defendant sold intoxicating liquor at Pat Courtney's place three months and more after the offense charged. This evidence, and it is the only evidence of the state on the point, does not show possession of the place in the defendant, so as to make the presence of liquor there important on the question of his guilt of an offense committed on March 18 in selling to the two detectives. If believed it does no more than show two isolated sales more than three months after the offense charged, and during this period there is no testimony that the defendant had any connection with Courtney's place or sold liquors anywhere. Such evidence is potent. The minds of judges do not escape it. The minds of jurors resist no better. Its effect as proof is logical.

There may be reasons for abandoning the general rule confining proof to the issue, and permitting evidence of other like offenses, showing a disposition or habit or practice or occasional or frequent indulgence on the part of the accused, and a resultant likelihood of his guilt, as on the whole the most conducive to the ascertainment of the truth. The brief of the attorney general, with characteristic frankness, as if anticipating the existence or propriety of such a rule, suggests that the accused was "a persistent violator of the laws of the state forbidding the sale of intoxicating liquor." A disposition to be fair with the accused has induced courts to limit the investigation to the specific offense for which the accused is on trial and which he is notified he must meet. A practical infirmity of such a rule is that it tends to satisfy judges and juries with a finding of guilt, though not sufficiently proved, if on another occasion the accused was guilty, or if on several other occasions there were charges and some considerable evidence of guilt. Wigmore, Ev. §§ 192-194; Jones, Ev. § 143, et seq; 2 Bishop, New Crim. Proc. § 1120, et seq. The resultant distraction of attention from the main issue and the time used in the investigation of collateral questions are not without importance. Two-thirds of the time of the trial was taken in an investigation of the raids on Pat Courtney's place, what was found there, what was said and done there, all involving Courtney and his place and its hangers on, but not touching or expected to touch the defendant.

Courts generally, though occasionally swayed by their belief of guilt, hold to the rule of exclusion. Our decisions, not always consistent, have professed adherence to it. State v. Miller, 151 Minn. 386, 186 N. W. 803; State v. Nelson, 148 Minn. 285, 181 N. W. 850; State v. Fitchette, 88 Minn. 145, 92 N. W. 527; State v. Friend, 153 Minn. 138, 186 N. W. 241. And see Wigmore, Ev. § 193, et seq; Jones, Ev. § 143; 3 Bishop, New Crim. Proc. § 628; 8 R. C. L. 198. It seems to me that under the guise of a plan or system proofs to show other remote offenses, and disconnected circumstances in connection with Pat Courtney's place of business prejudicial to the accused if in his possession, were permitted; and that unless the rule of exclusion is modified they should not have been received.