STATE v. JAMES UPSON.[1]

January 30, 1925.

No. 24,305.

**Intoxicating liquor—evidence admissible.**
    1. Testimony that the farm on which defendant lived was "run" by him was not objectionable as stating a conclusion.

**Evidence of other sales corroboration of charge.**
    2. Evidence of other sales by a member of defendant's family, from the family home, not too remote in point of time, was properly admitted as showing the source of defendant's supply, and therefore directly corroborative of proof of a sale of liquor by defendant himself.

[1]Reported in 201 N. W. 913.

**Discretion of court in denying new trial because of perjured testimony.**

3. The denial of a new trial upon the ground of newly discovered evidence is within the discretion of the trial court, where the new evidence would be furnished by witnesses who testified at the first trial, and who now, by their affidavits, show that their testimony then was perjured, or that they are now tendering perjured evidence for use at a second trial.

Defendant was indicted by the grand jury of Brown county charged with the crime of selling intoxicating liquor, tried in the district court for that county before Olsen, J., and a jury which found him guilty as charged in the indictment. From orders denying his motions for a new trial, and from the judgment of conviction, defendant appealed. Affirmed.

*Pfaender & Glotzbach*, for appellant.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Deputy Attorney General, and *T. O. Streissguth*, County Attorney, for respondent.

STONE, J.

Defendant appeals from the denial of his motion for a new trial after conviction of the offense of selling "a pint of moonshine" to one Ludwig Sellner on the evening of February 22, 1924. There is sufficient evidence to make the issue of guilt a fair jury question, so that the right to a new trial, if it exists, must stand upon the presence in the record of prejudicial error.

1. Defendant is a farmer living with his mother, now over 60 years of age, and his father who is well past 80. The evidence for the state tended to show that the source of supply from which the Sellner sale was made was the Upson home. With that in view it was not error to permit a neighbor, called as a witness, to answer a question as to who "runs" the Upson farm. The answer that it was run by defendant was not necessarily a conclusion. If it was, it cannot be held prejudicial. Concerning a farm, it is a common sort of inquiry calculated to elicit information as to the identity of the one generally in charge of or responsible for the major farm operations. It was so used in this connection and so

answered. If the answer was considered prejudicial, or not in conformity with the fact, or calculated to produce misunderstanding, it was easy enough to prevent any such result by cross-examination or, the facts warranting, by the necessary evidence contra. Defendant's relation to the farm was in fact fully gone into.

2. The sale for which defendant was convicted took place late in the evening. Earlier that evening, Ludwig Sellner had called at the Upson home and had first asked Mrs. Upson, defendant's mother, concerning defendant's whereabouts. Without going further into details, it is sufficient to say that he testified that, then and there, in the absence of defendant, he purchased from Mrs. Upson a bottle of liquor. This evidence was admitted over defendant's objection and is assigned as error.

It was followed by proof that, having purchased this first supply of whiskey, the price being 50 cents, Ludwig Sellner went to the near-by home of Conrad Weiss, where he made the fourth member of a convivial card party. Defendant was there and helped in the attempted consumption of the liquor which Ludwig Sellner claims to have purchased from Mrs. Upson. "Somewhere around eleven o'clock" the party broke up, and defendant took Ludwig Sellner home in his car. They stopped at the house, and Ludwig, according to his testimony, asked defendant "if he had another bottle." the first one having fallen out of Sellner's pocket and broken on the frozen ground. The second bottle was sold to Ludwig, he and his cousin Isadore Sellner, chipping in fifty cents as the price.

In a case of this kind it is frequently not only relevant but quite important to show the source of illicit liquor. Here it seems fairly within the realm of judicial inquiry that earlier in the evening, from a member of defendant's small family, in his home, another purchase had been made. The presence in that home, and the purchase from one so close to him as his mother, of the same sort of goods later furnished by defendant himself in answer to a query as to whether he had "another bottle," has probative bearing upon the question of defendant's guilt of the latter sale. The evidence did not depend for its admissibility upon the rule permitting proof of other similar offenses sufficiently connected with

the one under investigation to have probative effect concerning it. That rule does not apply at all because the act now under consideration was not that of defendant himself. It goes rather to show that in his home liquor was kept for sale, a fact the relevancy of which seems beyond doubt. For that reason, we hold that the proof of the prior sale by the mother was properly admitted.

Its exclusion would have ignored the too abundant reasons for the warning sounded by Dean Wigmore (1 Wigmore, Ev. § 83), that, "the general impropriety of using against an accused person either character, or specific misconduct to show character, is so constantly in the mind of the courts that they occasionally ignore the possibilities of evidence * * * and, by a wrong construction of the purpose of the evidence, feel bound to apply to it exclusionary rules that have no concern with it." That is the author's introduction to his statement of the general principle, within which this case falls, that "the existence * * * of the physical capacity, skill or means to do an act is admissible as some evidence of the possibility * * * of the person's doing or not doing it."

The tests of relevancy are the same in civil and criminal litigation, although in the latter, trial judges may, and frequently do, in the exercise of their discretion as preliminary "testers" of evidence, apply with more strictness the rules of exclusion.

"But yet the competency of a collateral fact to be used as the basis of legitimate argument is not to be determined by the conclusiveness of the inferences it may afford in reference to the litigated fact. It is enough if these may tend, even in a slight degree, to elucidate the inquiry, or to assist, though remotely, to a determination probably founded in truth. Indeed, to require a necessary relation between the fact known and the fact sought, would sweep away many sources of testimony to which men daily recur in the ordinary business of life, and that cannot be rejected by a judicial tribunal, without hazard of shutting out the light. Merely foreign matter must be avoided; but, though in appearance foreign, if it bear at all on the main subject, it must be heard * * *. The convincing power of the inference is for the jury, when weighing

the value of the fact proved; not for the judge, in determining the bare question of its relevancy. It is sufficient for the purposes of his inquiry, that it has some affinity with the principal inquiry, though this may be weak or remote." Stevenson v. Stewart, 11 Pa. 308.

All this is so for several reasons. "One is that a party cannot be expected or required to prove the fact by a single item of evidence; and another reason is that the jury are the exclusive judges of the weight to be given each item of evidence." Deal v. State, 140 Ind. 354, 39 N. E. 930. "The great and general rule up on the subject seems to be this,—that all the facts and circumstances upon which any reasonable presumption * * * can be founded as to the truth or falsity of the issue, or disputed fact, are admissable in evidence." Richardson v. Turnpike Co. 6 Vt. 496, 504. The statement of the rule shows its immunity from change or exception because of the fact that the issue concerns criminal rather than civil liability.

In order not to be misunderstood, it is well to say that our holding that the evidence under review was properly admitted does not mean that its exclusion would have been error. With respect to collateral facts, so called, there is a twilight zone between clear relevancy and obvious irrelevancy in which the conclusion of the trial judge is final.

Another and important assignment of error challenges the proof of another sale, by defendant or his mother in and from their home, of a gallon of whiskey for the purpose of a charivari party about a month earlier. What we have said concerning the propriety of proving that the Upson farm was a source of illicit liquor during the time in question applies here also. In addition, this evidence came in mostly as rebuttal and at a time when it was important for the state to contradict and impeach, if possible, testimony by defendant and his mother that they made no sales and did not have liquor for sale in their home. That sort of testimony opened the way to any evidence, even of collateral nature (Glassberg v. Olson, 89 Minn. 195, 94 N. W. 554), having a fair tendency to show

who was telling the truth. In all cases where there is such a conflict of testimony as there was here, and the jury is under the disagreeable duty of separating true from false, the trial judge has a wide discretion to admit any testimony, otherwise proper, which has a clear tendency to distinguish true from false. So in this case, defendant and his mother having denied not only the offense in question but that they ever had "any moonshine around the place at all" testimony of other sales from their home was clearly admissible so long as it was not too remote in point of time.

The evidence of the prior sale of the "gallon jug of liquor" was limited by the charge to "the purpose of impeaching the testimony of the witnesses for the defendant." Concerning the sale by Mrs. Upson, the jury was charged: "This evidence referring to other times or to other sales is only to be considered by you so far as you find it had a tendency, if any, to show that liquor was being handled by the defendant at the time of the alleged sale to Ludwig Sellner." Its clear bearing in that direction puts the admissibility of the evidence beyond question. At least its admission was a matter of discretion, for, when it comes to collateral matters, the trial judge has, and of necessity must have, a wide discretion. Members of a family as intimate as those of defendant's consisting of father, mother and son, are not in the habit of selling liquor in the home without each other's knowledge and consent. Proof that the mother had transported liquor in substantial quantities to the home would have been relevant to and corroborative of proof of a sale by defendant. Possession of considerable quantity by any member of his family, in the home, would have been equally relevant. Why then is not a sale in the home, by the mother, equally material as showing the existence, source and location of defendant's supply?

The situation in People v. Giddings, 159 Mich. 523, 124 N. W. 546, 18 Ann. Cas. 844, was very different. There the defendant at the time being was living in a tent on a huckleberry marsh. His offense was the furnishing of one drink of liquor to an employe, Foster. Proof was admitted that Holmes, another employe, who "lived with Mr. Giddings" had furnished alcohol out of a half pint bottle to still another employe. The testimony of the latter

was that he did not know where Holmes got "this liquor in question. *He did not get it out of Mr. Gidding's tent.* He had the liquor in a half pint bottle." That testimony was held not to connect the defendant with the transaction. The difference between that case and this is obvious. The subject matter of the Holmes transaction came from his own pocket flask. In the instant case the sale or sales by the mother were from what the jury might consider, with good reason, a family supply kept for sale in and from the family home. To hold that the testimony was not admissible would do violence to the processes of rational inference and restrict to an intolerable narrowness the discretion of a trial judge in the admission of evidence.

This is not a case of "undue latitude and emphasis * * * in the range over certain collateral inquiries and issues" to an extent confusing and prejudicial to "an unbiased determination of the one controlling issue of fact." People v. Willson, 205 Mich. 28, 37, 171 N. W. 474, 477. On the other hand it need not be brought within the rule admitting "evidence disclosing a general system practiced by defendant" of committing a given kind of crime. State v. Monroe, 142 Minn. 394, 172 N. W. 313; State v. Clark, 155 Minn. 117, 192 N. W. 737. Evidence is neither within nor without the "rule of exclusion" simply because it shows other offenses. The relevancy of such evidence is to be determined as is that of any other. State v. Ames, 90 Minn. 183, 96 N. W. 330. There has never been any doubt as to the admissibility of "connected, precedent or surrounding circumstances" indicating the happening of the "principal fact" wherever "it may naturally be assumed that a connection exists between the main fact and the subordinate fact." Underhill, Crim. Ev. § 160. If it were otherwise the laws of evidence would not be adjusted, as they are, "to the laws of the mind as well as to the laws of the land." It follows that "any fact is relevant which, when taken alone or in connection with another, would warrant the jury in drawing a logical inference with reference to the issue on trial." 8 R. C. L. 179. Certainly it would be a violation of the "laws of mind" to say that a proper inference might not be drawn—with reference to the charge that defendant, close to his own home, pro-

duced from his automobile and sold to a neighbor a bottle of whiskey —from the fact that a supply was kept in his house and sales made therefrom by another member of the family.

3. The other assignments of error which challenge rulings of evidence need no special mention. So far as the denial of a new trial disregards newly discovered evidence, it was well within the discretion of the trial judge. The record has been given careful examination. No useful purpose would be served by further discussion of it. Some of the affidavits were made by witnesses whose testimony is already of record and who cannot escape the conclusion either that they have already perjured themselves or are willing to do so if given the opportunity which would be afforded by a new trial. It goes without saying that the tender of testimony so discredited does not compel a new trial.

Order affirmed.

WILSON, C. J. (dissenting.)

I dissent to that portion of the opinion which holds that it is proper, when the defendant is on trial for selling moonshine from his automobile, to prove that his mother three hours earlier sold moonshine from their home. If it was received for the purpose of showing that liquor was kept for sale, it would have been sufficient to have shown its presence in defendant's home without showing that the mother actually sold it. If, as stated, it was received to show that such liquor "was kept for sale" it is most assuredly "relevant" for that purpose. But it is not directed to the issue with defendant. The practical result was that the jury would believe defendant guilty because his mother had committed the same crime. It was not necessary to prove the mother made a sale. This evidence of her making a sale would naturally excite prejudice. It was highly inflammable. Obviously it had no other purpose in the case. The relation of mother and son is pointed out as a justification for the reception of the evidence and as giving it a "probative bearing * * *upon the defendant's guilt." It has this effect, merely because of the showing that the mother was guilty of the same offense. That very fact, to my mind, makes it objectionable.

I cannot believe that the ordinary juror would not be unduly and prejudicially influenced by such testimony. There are cases in which the necessary evidence involved the commission of other crimes, but this is not one of them. Upon the trial the learned court said: "I don't think you can show a purchase from somebody else," but the state did show the purchase from the mother. The court then, in charging the jury, attempted to limit the effect of this proof to its tendency to show that liquor was being handled by defendant. For such purpose and upon this theory the state could have proved the presence of liquor in defendant's home without proving that the mother sold it, although there is nothing to show that the two offenders had a common supply. Presumably this is to be inferred from the fact that they are mother and son and live in the same home. I regard this case as establishing a dangerous rule. I think this testimony was of such "relevancy" and of such "probative bearing" not upon defendant's guilt, but upon the unfairness of his trial, that this conviction should not be permitted to stand. It needs no argument to support the assertion that, if the jury believed that the mother was violating the law, they would not be slow in convicting the son. The charge of the court could not restrict the effect of such testimony.

The law has never permitted a person to be convicted of a crime by evidence that another person has committed a similar crime. 22 C. J. 746 (49). Evidence of the commission of other crimes by the defendant is admissible when it tends corroboratively or directly to establish the defendant's guilt of the crime charged or some essential ingredient thereof. Questions of this character that may be doubtful should be resolved in favor of the accused. State v. Fitchette, 88 Minn. 145, 92 N. W. 527.