### STATE v. R. L. HORR.[1]

May 1, 1925.

No. 24,554.

**Affidavit of prejudice against judge may be filed by state in civil actions.**

1. The statutory provision that a party to an action in a court having three or more judges may file an affidavit of prejudice against the judge who is to preside applies to the state in civil actions.

[1]Reported in 203 N. W. 979.

**Finding sustained that "volume tables" used in rescaling were accurate.**

2. The evidence sustains the finding that the "volume tables" used in rescaling the timber in controversy were accurate for timber of that character.

**Finding sustained that no timber taken by trespassers was rescaled.**

3. The evidence sustains the finding that no timber taken by trespassers was included in the rescale.

**Finding sustained that original scale was false and known to be false.**

4. The evidence sustains the finding that the original scale reported to the state was incorrect and false, and known to be so by those who made it.

**Evidence of similar fraudulent scales admissible.**

5. Evidence of similar fraudulent scales made by the same party under similar circumstances was admissible. Also evidence of an offer to make a similar fraudulent scale for a money consideration.

**Testimony of estimators admissible.**

6. The court did not exceed its discretion in admitting testimony of the estimators who made the rescale.

**Brief will be stricken when it contains libelous statements concerning opposing witnesses and attorneys.**

7. Where a brief is filled with scandalous and libelous statements concerning the opposing party and his witnesses and attorneys, it will be stricken from the files.

1. See Judges, 33 C. J. p. 1013, § 1128.
2. See Evidence, 22 C. J. p. 925, § 1128 (1926 Anno).
3. See Public Lands, 32 Cyc. p. 793 (1926 Anno).
4. See Public Lands, 32 Cyc. p. 793 (1926 Anno).
5. See Public Lands, 32 Cyc. p. 793 (1926 Anno).
6. See Evidence, 22 C. J. p. 746, § 836; Public Lands, 32 Cyc. p. 793 (1926 Anno).
7. See Appeal and Error, 3 C. J. p. 1433, § 1595.

Action in the district court for Ramsey county to recover upon six timber permits. The case was tried before Olin B. Lewis, J., who ordered judgment as stated in third paragraph of opinion. De-

fendant appealed from an order denying his motion for a new trial. Affirmed.

*Fryberger, Fulton, Hoshour & Ziesmer* and *F. M. Catlin,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Deputy Attorney General, and *Ernest C. Carman,* Assistant Attorney General, for respondent.

TAYLOR, C.

The statute governing the sale of state timber in force in 1912 provided that all sales of such timber should be made at public auction at the State Capitol except as otherwise expressly provided, G. S. 1913, § 5272; and that the timber so sold should be scaled by the surveyor general of the district in which it was located, G. S. 1913, §§ 5282 and 5283. The statute further provided that the timber on tracts, "where the estimated quantity of log timber thereon" did not exceed 100,000 feet, might be sold at auction at the county seat of the county in which it was located, and that timber so sold should be scaled by a state land examiner instead of by the surveyor general. G. S. 1913, § 5273.

J. H. Beagle was the state timber examiner in charge of the state timber in Koochiching county for several years prior to 1912, and continued in that capacity until the middle of February, 1916. In the early part of 1912, he made and reported to the state auditor an estimate of the timber on 12 tracts of land—five in township 69 of range 22 and seven in township 69 of range 23—showing that the "log timber" on each thereof was less than 100,000 feet. This timber was sold to defendant at a sale held at the county seat in 1912, and a separate permit was issued to him for each of the 12 tracts. He cut the timber covered by the five permits in township 69, range 22, first, and apparently completed removing it in the season ending in the spring of 1914. He then cut the timber covered by the permits in township 69, range 23, and completed removing it in the season ending in the spring of 1916.

The state brought this action to recover for timber cut under six of the permits in township 69, range 23. The complaint alleges

that defendant cut and removed from each of these tracts the quantity of timber stated therein and had paid only a part of the contract price therefor. Judgment is demanded for the balance claimed to be due. The answer admits the contracts and states the quantity of timber cut thereunder and alleges that defendant has paid the full contract price therefor. The case was tried to the court without a jury. The court made extended findings of fact which cover 15 printed pages of the record, and directed judgment for the state for the sum of $18,572.08.

Defendant appealed from an order denying a new trial. Defendant is only the nominal defendant. He is interested in the International Lumber Company, and permitted that company to take the permits in his name for its own benefit, and to cut and remove the timber.

Defendant groups his assignments of error under seven headings.

1. Section 9221, G. S. 1923, provides that any party to a cause pending in a district court having three or more judges may file an affidavit of bias against the judge who is to preside at the trial and that thereupon such judge shall secure another judge to preside at such trial. This action was brought in the district court of Ramsey county which has more than three judges. The assistant attorney general, on behalf of the state, filed an affidavit of bias against the judge who was to preside. This judge promptly sent the case to another judge. Thereupon defendant filed an affidavit of bias against the second judge who in turn sent the case to a third judge before whom it was tried. Defendant now insists that the above statute does not apply to the state; and that transferring the case from the first judge was error. He cites no authority in support of his proposition. It would be sufficient to say that defendant was not entitled to have the case tried before any particular judge, and that there is no claim that the judge before whom it was in fact tried was disqualified in any way. But, where the state brings a civil action to enforce its property rights, we see no reason why it is not entitled to the same privileges accorded other plaintiffs, unless the statute provides otherwise.

2. Beagle had charge of scaling the timber cut under the six permits in question until February, 1916, when he was superseded by Charles B. Lang who had charge of scaling the comparatively small quantity cut thereafter. A. B. Chevrier, employed as a helper, did the actual scaling of all the timber cut under these six permits. He reported to Beagle the quantities cut while Beagle was in charge and Beagle reported them to the state auditor. He reported to Lang the quantities cut while Lang was in charge and Lang reported them to the state auditor. Defendant paid the contract price to the state for the quantities so reported. In 1920, the state auditor received information which led him to demand a rescale. The rescale showed that the quantity of timber cut under these six permits was more than double the quantity originally reported.

The land had been burned over after the timber had been removed and before the rescale was made, so that it was impossible to make the usual top and stump scale. The rescale was made by counting and measuring the stumps, and computing the quantity of timber cut from such stumps by means of "volume tables" prepared and in use for that purpose. Such tables are prepared by measuring and computing the "volume" of a large number of felled trees, and ascertaining the average "volume" of trees of given diameters of the average height of those measured. The "volume tables" used in making the rescale were prepared from measurements of trees in other localities in the state; and defendant insists that they were based on trees of a greater average height than those in question, and that the "volume" of the trees in question, as computed by the use of such tables, is incorrect and excessive for that reason. The trial court found, as a fact, that these tables were true and accurate for timber of the character of that in controversy and there is ample evidence to support this finding. In fact, there is evidence tending to show that the quantity of timber on the lands in question as computed by these tables is less than the actual quantity.

3. Defendant contends that quantities of timber had been cut and removed from these lands by trespassers before the issuance of the permits, and that the timber taken by such trespassers was included in the rescale. The court found against defendant on this

contention; and that said "rescale  *  *  *  did not include any timber not covered by said permits," and that it showed the amount of timber cut and removed by defendant.and was "impartial and correct." These findings are also sustained by the evidence. While defendant presented testimony tending to show that timber had been taken by trespassers, plaintiff presented testimony to the contrary, and tending to show that the trespasses committed, if any, were upon other lands.

4. The trial court found that the reports made by Chevrier and Beagle of the quantities of timber cut and removed from the several tracts by defendant were each and all incorrect and false, and were known by Chevrier and Beagle to be incorrect and false at the time they were made. Defendant attacks this finding, but we find ample evidence in the record to sustain it. As other matters will be referred to later, we will mention only one circumstance at this time in addition to the inferences from the fact that these reports showed less than one-half the timber actually cut.

The greater part of the timber on the northwest quarter, the northeast quarter and the southeast quarter of section 36, township 69, range 23, was cut and removed while Beagle had charge of the scaling. The remainder on these tracts, and all the timber on the southwest quarter of the section, except a small quantity of tamarack and cedar, was cut and removed while Lang had charge of the scaling. Witnesses who saw the timber before it was cut stated that the stand on the north half of the section was thicker and heavier than on the southwest quarter. Chevrier scaled all the timber cut on this section. The scale which he turned in to Beagle and which Beagle reported to the state auditor covered the bulk of the timber cut on the northwest quarter, the northeast quarter and the southeast quarter of the section. The scale which he turned in to Lang and .which Lang reported to the state auditor covered the remainder of the timber on these tracts and all the timber on the southwest quarter except the small quantity of tamarack and cedar cut while Beagle was in charge. The quantity reported from the southwest quarter exceeded the total amount reported from the entire north half of the section. The entire section was rescaled by experienced

men appointed by the state. They made their scale by use of the "volume tables" and without any knowledge of the prior scales. Their scale gave the quantity cut on the southwest quarter as less than the quantity originally reported, but gave the quantity cut on the other three-quarters as more than double the quantity originally reported. The reports made by Chevrier to Beagle and by the latter to the state auditor were the same.

5. Beagle had exclusive charge of scaling the timber cut under the five permits in township 69, range 22. The actual scaling was done by Harvey Gale who reported his scale to Beagle and Beagle reported the quantity cut to the state auditor. Gale testified to the scale which he had made and reported to Beagle. This showed a much larger amount cut than Beagle had reported. We give both reports as to one tract, the north half of section 24. Gale reported to Beagle 80,690 feet of white pine; 48,931 feet of spruce; 58,920 feet of tamarack; 10,065 tamarack ties; 3,611 cedar ties; 3,384 cedar poles, and 83,881 cedar posts. Beagle reported to the state auditor 40,460 feet of white pine; 28,030 feet of tamarack; 4,000 tamarack ties; 2,349 cedar poles; 30,800 cedar posts, and 70 cords of spruce pulpwood. The law required all timber cut from state land to be marked on the end with the state stamp. Gale proceeded to place the state stamp on the timber scaled by him. He testified that after a part of the timber had been so marked he was directed by Beagle to quit putting the state mark on it as too much state timber was showing up at the landing, and that he quit marking it in obedience to this order.

Defendant contends that the court erred in admitting the testimony of Gale concerning the matters above mentioned, for the reason that it relates to transactions under other permits not involved in the present action. It relates to similar transactions by the same parties in respect to the performance of similar contracts made at the same time. Its relevancy is plain, and we think it was properly admitted.

6. Defendant also contends that the court erred in receiving evidence of a proposal by Beagle to make a false and fraudulent report of timber cut by Robert Kelly, for the reason that this mat-

ter did not concern any of the timber in controversy in the present action.

Kelly was cutting state timber at another locality in the same county, and was delivering the pulpwood to the same company that was cutting the timber in controversy. Beagle had charge of the scaling. The facts shown by the evidence objected to, stated briefly and in substance only, are as follows: On July 7, 1915, Beagle went to Kelly's office and stated that the reports showed that Kelly had cut 1,145 cords of pulpwood; and that he, Beagle, had reported 500 cords, a difference of 645 cords, and thought that he was entitled to about one-third of such difference. Kelly requested him to put his proposition in writing, and he made out a bill for the sum of $200. Kelly said he was not ready to give an answer then, but would let him know shortly. The next day Kelly wrote Beagle:

"After careful consideration, I much prefer to pay the state in full for stumpage. I will be pleased to show you our cutting and shipping records at any time."

To this letter Beagle replied the next day, July 9th:

"Your letter of the 8th inst. at hand and contents carefully noted. And in reply will say, so far as I am concerned, the matter will never be mentioned again to anyone; and sincerely trust it will not be by you.

"My desire is to show you in the future that I admire you in the stand you have taken and only wish there were more like you. I wish to assure you, Mr. Kelly, that it is not from choice that I have done some things. Our jobs are in the hands of the lumbermen.

"Very sincerely yours,

"J. H. BEAGLE."

It is the general rule that evidence of other transactions not connected with the matters in litigation, although similar thereto, is not admissible; but the authorities recognize that cases of fraud are excepted from this rule. Where fraud is charged, proof of other similar frauds committed by the same parties, at a time and under circumstances from which it may reasonably be inferred that the prepetrators were actuated by the same motives as in the pending

case, is admissible. Among our own cases bearing on the question are the following: Berkey v. Judd, 22 Minn. 287; Hinkley v. Freick, 112 Minn. 239, 127 N. W. 940; Albrecht v. Rathai, 150 Minn. 256, 185 N. W. 259, and cases cited therein. The same principle is applied in criminal cases. State v. Monroe, 142 Minn. 394, 172 N. W. 313, and cases there cited; State v. Upson, 162 Minn. 8, 201 N. W. 913, and cases there cited.

The same principle is applied in other jurisdictions. New York Mut. Life Ins. Co. v. Armstrong, 117 U. S. 591, 598, 29 L. ed. 997, where Justice Field says:

"A repetition of acts of the same character naturally indicates the same purpose in all of them; and if when considered together they cannot be reasonably explained without ascribing a particular motive to the perpetrator, such motive will be considered as prompting each act."

Also Fowle v. Child, 164 Mass. 210, 41 N. E. 291, 49 Am. St. 449; McCasker v. Enright, 64 Vt. 488, 24 Atl. 249, 33 Am. St. 938; Yakima Valley Bank v. McAllister, 37 Wash. 566, 79 Pac. 1119, 1 L. R. A. (N. S.) 1075, 107 Am. St. 823; Marlatt v. Couture, 41 N. D. 127, 169 N. W. 582; Beard v. Hill, 131 Mich. 246, 90 N. W. 1065; Stotts v. Fairfield, 163 Iowa, 726, 145 N. W. 61; Thompson v. Rose, 16 Conn. 71, 41 Am. Dec. 121; Tooker v. Alston, 159 F. 599, 86 C. C. A. 425; 12 R. C. L. 435; 4 Chamberlayne, Evidence, § 3223. We think that under the rule applicable in cases of fraud evidence to prove the transaction in question was admissible.

7. Defendant complains because some of the estimators who made the rescale were permitted to state that the reports of the rescaling concerning which they had testified were correct so far as they knew, on the ground that parts of such reports were made by other estimators. The rescales were testified to in detail by those who made them, with ample opportunity for cross-examination of which defendant fully availed himself, and we see nothing prejudicial in the statements questioned. Admitting them was within the discretion of the court.

8. Defendant made a motion to strike plaintiff's brief from the files on the ground that it is "saturated" with scandalous and libel-

ous statements concerning defendant, his counsel, witnesses and associates. We regret to say that we find this charge only too well-founded. We are surprised that the able counsel who prepared this brief should so far forget themselves as to apply such vituperative epithets to the parties, witnesses and counsel opposed to them, and to cast such unseemly aspersions upon their conduct and motives. We call attention to the action of the Supreme Court of the United States in Royal Arcanum v. Green, 237 U. S. 531, 35 Sup. Ct. 724, 59 L. ed. 1089, L. R. A. 1916A, 771; also to the action of other courts in similar cases cited in 3 C. J. 1433, § 1595. The abusive expressions are interspersed through the greater part of the brief and cannot be eliminated by merely striking a few pages. The brief is stricken from the files, but another without the objectionable matter may be filed to place respondent's claims on record.

The order of the learned trial court is affirmed.

On June 12, 1925, the following opinion was filed:


PER CURIAM.

In view of the application for a reargument upon the question of whether the admission of evidence of the Kelly episode, mentioned in the paragraph of the opinion numbered 6, constituted reversible error, a further statement may be proper to correct an apparent misconception of what was intended by some of the language used.

The action was for the purchase price of timber sold. No fraud was alleged or relied upon as a ground for recovery. The sole controversy was in respect to the quantity of timber sold. The scale reported by Beagle was evidence bearing on this issue. Plaintiff presented evidence tending to show that this scale was false and fraudulent, and that Beagle had intentionally caused it to be falsified. In connection with this matter evidence of his proposition to Kelly was received. It bore only upon the weight and credit to be given to his scale as evidence. It had no other effect. The party charged with fraud was Beagle, not defendant. There was no attempt to connect defendant with Beagle's fraudulent acts. But we think that the admission of this evidence tending to show the unreliability of Beagle's reports was within the discretion of the court.

Reargument denied.