*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1027**

State of Minnesota,
Respondent,

vs.

Jose Luis Guzman,
Appellant.

**Filed April 27, 2015
Affirmed
Reilly, Judge**

Olmsted County District Court
File No. 55-CR-10-4829

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges his third-degree felony criminal sexual conduct conviction, arguing that the district court abused its discretion by allowing into evidence a picture of appellant's genitalia and statements from the victim to her coworker, and further arguing

that the district court abused its discretion by denying appellant's motion for a downward dispositional departure at sentencing. We affirm.

**FACTS**

In 2009, appellant lived in an apartment in Rochester, Minnesota, with his wife and two young sons. K.A., a personal care attendant, worked with the family to provide in-home care to appellant's five-year-old son, K.G. The Southeastern Minnesota Center for Independent Living (SEMCIL), an agency that provides independent living services and personal care assistance to mentally and physically disabled clients in their homes, employed K.A. K.A. worked approximately 28 hours a week helping K.G. with bathing, learning the alphabet, counting, and school work.

On December 30, 2009, appellant took a picture of his penis and sent it to K.A.'s cell phone. K.A. did not ask appellant to send this picture and did not expect it. Appellant asked K.A. if she received the picture and K.A. "lied to him and told him that [her] phone didn't work because [she] didn't want it to escalate." Appellant did not send K.A. any other sexual pictures after that incident.

On March 11, 2010, K.A. arrived at the apartment around noon. Appellant, K.G., and K.G.'s mother were present in the home. Appellant was in his bedroom and did not interact with K.A. Several hours later, K.G.'s mother left the apartment to run errands and K.G.'s brother returned home from school. Appellant came out of his bedroom and said something to the children in Spanish and they went into their bedroom, leaving K.A. alone with appellant.

2

Appellant asked K.A. if she wanted to see something on his phone and showed her a pornographic video. K.A. told appellant that the video was "disgusting and disturbing" and she "didn't want to see it." Appellant laughed and pulled his chair closer to K.A.'s chair. Appellant grabbed K.A.'s face and began kissing her, put K.A.'s hand on his clothed penis, and lifted up her sweatshirt and bra and touched her breasts. Appellant undid K.A.'s belt and pants and put his hands down her pants and inside her underwear. Appellant unzipped his pants, "brought his penis out," and forced her to move her hand up and down on his penis. Appellant stood up and put his penis against K.A.'s chest.

K.A. told appellant to stop "several, several, several times" and stated that she was on her menstrual cycle and had a tampon in. K.A. tried to pull away from appellant, but he grabbed her arm to stop her. Appellant put his finger inside her vagina. K.A. testified that it "hurt" when he put his fingers inside her vagina because she "had a tampon in" and it "got lodged way up." Appellant had his finger in K.A.'s vagina at the same time that he held K.A.'s hand against his penis, and he ejaculated.

K.A. left the apartment soon afterwards and drove to her cousin's house. K.A.'s cousin encouraged her to report the incident to the police, but K.A. was scared that appellant would "do[] something more" to her. Instead, K.A. called her scheduler at SEMCIL and left a message asking her to return the call. K.A. also called and left a voicemail message on SEMCIL's after-hours telephone line. The SEMCIL scheduler returned K.A.'s telephone call the following morning and recounted that K.A. sounded "very upset," her voice was "shaky," and she became teary during the conversation. The scheduler arranged for K.A. to come to the SEMCIL office and call the police.

K.A. went to SEMCIL's office on March 12 to meet with two Rochester police officers and report the assault. The police officers set up a covert phone call between K.A. and appellant to gather further information. K.A. called appellant from her cell phone while the police officers recorded the call and listened in on the conversation. Appellant admitted to putting his finger inside of K.A.'s vagina. Appellant acknowledged that he heard K.A. repeatedly ask him to stop, which he did not do. A few days later, a police officer met with K.A. again to take pictures of bruises that had developed on her arms over the weekend. K.A. also provided the officer with the photograph on her cell phone of appellant's penis. A police officer met with appellant on March 15. Appellant admitted to engaging in sexual conduct with K.A. but claimed it was consensual. K.A. did not have contact with appellant's family after March 11.

The state charged appellant with felony third-, fourth-, and fifth-degree criminal sexual conduct. Appellant waived an omnibus hearing and entered a not-guilty plea. Appellant moved to suppress evidence that he texted K.A. a photograph of his penis and also moved to suppress alleged-hearsay testimony regarding the conversation between K.A. and the SEMCIL scheduler on March 12. The district court denied appellant's motions. A jury trial was held on March 4-6, 2013, and the jury returned a verdict finding appellant guilty of each of the three sexual conduct charges. The district court ordered appellant to report to community corrections for a presentence investigation and psychosexual evaluation and return for sentencing in May 2013. Appellant was placed on electronic home monitoring pending sentencing.

The May 2013 presentence investigation report provided that third-degree criminal sexual conduct is a severity-level C offense with a presumptive commitment to the commissioner of corrections for a period of 62 months, with a lower range of 53 months and an upper range of 74 months. Appellant moved for a downward dispositional departure from the sentencing guidelines, claiming that he was "particularly amenable to probation" and sex offender treatment and was remorseful for his conduct. The sentencing hearing was held on May 30. Appellant failed to appear for the hearing and appellant's attorney indicated that he did not know where his client was. The district court issued a bench warrant for appellant's arrest. Appellant was ultimately arrested in February 2014. The district court held a hearing and revoked appellant's conditional release pending sentencing.

The sentencing hearing was held in March 2014. The district court stated on the record that appellant destroyed his electronic home monitoring bracelet and "absconded from custody." Appellant's attorney argued that appellant "may well be successful at sex offender treatment" and sought a downward departure from the presumptive sentence. The district court denied appellant's departure motion based on its determination that appellant was not "particularly suitable to individualize[d] treatment in a probationary setting," and that there were not "substantial and compelling circumstances" justifying departure. The district court adjudicated appellant guilty on the third-degree criminal sexual conduct offense and committed him to the commissioner of corrections for a period of 66 months with a ten-year conditional release period.

This appeal followed.

# DECISION

## I.

Appellant challenges two of the district court's evidentiary rulings, arguing that the cumulative prejudicial effect of the evidence substantially affected the verdict. "The admission of evidence at trial is within the broad discretion of the district court and will not be reversed absent a clear abuse of discretion." *State v. Thompson*, 788 N.W.2d 485, 495 (Minn. 2010). Appellant bears the burden of establishing that the district court abused its discretion in admitting the challenged evidence and that he was prejudiced thereby. *State v. Nunn*, 561 N.W.2d 902, 907 (Minn. 1997). Reversal is only warranted when the error "substantially influences the jury's decision." *Id.*

## A.

We first consider appellant's argument that the district court abused its discretion by admitting into evidence a photo of his genitalia sent from appellant's cell phone to K.A.'s cell phone because it was more prejudicial than probative and not necessary to prove an element of the crime. At the suppression hearing, the state argued that sexual motive was an element of the fourth-degree criminal sexual conduct charge and the evidence "tend[ed] to prove the [appellant's] sexual or aggressive motive" toward K.A. Minn. Stat. § 609.341, subd. 11(a) (2012) (defining fourth-degree "sexual contact" as an act committed without the complainant's consent and with "sexual or aggressive intent"). The district court agreed with the state and denied appellant's suppression motion.

Under Minnesota Rule of Evidence 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or

needless presentation of cumulative evidence." Rule 403 favors admission of relevant evidence, "as the probative value of the evidence must be 'substantially' outweighed by prejudice." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). "Evidence is relevant and has probative value when it, in some degree, advances the inquiry." *Id.* A district court has broad discretion in determining whether to admit a photograph into evidence and we will not reverse the district court's decision absent an abuse of discretion. *State v. Dame*, 670 N.W.2d 261, 264 (Minn. 2003).

Appellant argues that the December 2009 photograph was not relevant because it was "too far removed" from the March 2010 offense to be probative of intent. A fact is relevant if it, "in connection of other facts, warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question." *Schulz*, 691 N.W.2d at 478. Additionally, rule 403 requires the district court to consider whether the probative value of disputed evidence is substantially outweighed by the danger of unfair prejudice. Minn. R. Evid. 403. Unfair prejudice "is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *Schulz*, 691 N.W.2d at 478. Here, the district court determined that the picture was relevant "to the issue of aggressive intent" and was not unfairly prejudicial "considering the severity of the offense and the [s]tate's high burden of proving . . . aggressive intent." We conclude that this decision fell within the district court's broad discretion.

Further, the district court gave a cautionary instruction prior to publishing the photograph to the jury to establish that the evidence would be presented solely for the

purpose of determining whether appellant's acts were committed with sexual or aggressive intent. The use of a cautionary instruction mitigated the danger that the evidence would be misused. *State v. Diggins*, 836 N.W.2d 349, 358 (Minn. 2013). An appellate court defers to a district court's evidentiary rulings because it "stands in the best position to evaluate the prejudicial nature of evidence." *Id.* at 357. We hold that the district court did not abuse its discretion by allowing the photograph into evidence.

**B.**

We next turn to appellant's claim that the district court abused its discretion by admitting into evidence K.A.'s statement to her coworker because it did not fall within an exception to the hearsay rule. The state argued that the statement was admissible under evidentiary rule 801(d)(1)(B) as a prior consistent statement. The district court agreed with the state and allowed the coworker to testify about her telephone conversation with K.A. on March 12.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Hearsay is generally not admissible at trial. Minn. R. Evid. 802. However, an out-of-court statement offered to prove the truth of the matter asserted may be admissible if it is covered by an exception to the hearsay rule or is exempted from the definition of hearsay. *State v. Robinson*, 699 N.W.2d 790, 794 (Minn. App. 2005), *aff'd*, 718 N.W.2d 400 (Minn. 2006). Under rule 801(d)(1)(B), a witness's prior statement that is consistent with her trial testimony is admissible as non-hearsay evidence "if the statement is helpful to the trier of fact in evaluating the witness's credibility, and if the witness testifies at trial and is subject to cross-examination about

8

the statement." *State v. Bakken*, 604 N.W.2d 106, 109 (Minn. App. 2000), *review denied* (Minn. Feb. 24, 2000); Minn. R. Evid. 801(d)(1)(B). Before a statement may be admitted under rule 801(d)(1)(B), the district court must first make a "threshold determination" that the witness's credibility has been challenged. *Bakken*, 604 N.W.2d at 109. The district court must then inquire into whether the out-of-court statement was consistent with the witness's trial testimony. *Id.* Lastly, the district court must evaluate whether the statement would "be helpful to the trier of fact in evaluating the witness's credibility." *Id.*

Appellant argues that the coworker's testimony was not admissible because the district court did not make a formal finding that K.A.'s credibility had been attacked. Before a prior consistent statement can be admitted, "the witness' credibility must have been challenged, and the statement must bolster the witness' credibility with respect to that aspect of the witness' credibility that was challenged." *Nunn*, 561 N.W.2d at 909. The state argues that K.A.'s credibility "was the entire case." We agree. In *Bakken*, this court determined that the victim-witness's credibility "was central to the case" where she "was the only witness to present firsthand evidence" against the accused. 604 N.W.2d at 109. This case is analogous.

Appellant's attorney made several references in his opening statement calling K.A.'s credibility into question. Appellant's attorney stated that he would present to the jurors "a number of deceitful activities that [K.A.] engaged in" regarding a purported social friendship between appellant and K.A., and stated that K.A. "[l]ied to [appellant] on three or four different occasions" and exhibited a "consistent pattern of deceit."

9

Appellant's attorney told the jury that "[w]e have basically a he said/she said scenario." Several times during cross-examination, appellant's attorney asked K.A. if she had lied to appellant. Appellant's attorney challenged K.A.'s credibility during opening statements and on cross-examination, and her credibility was critical to the state's case. *See, e.g.*, *State v. Grecinger*, 569 N.W.2d 189, 193 (Minn. 1997) (stating that a victim's credibility "can be attacked during cross-examination of the victim or even during opening statements"). The credibility factor is satisfied.

We also determine that the prior statement and the trial testimony are consistent with one another. *Bakken*, 604 N.W.2d at 109. Appellant argues that K.A.'s testimony was not consistent with the statements made to her coworker because the statements to the coworker were more general and did not contain the same level of detail present in her trial testimony. The trial testimony and the prior statement "need not be verbatim." *Id.* In *Bakken*, the witness's prior statement and testimony were consistent "as to the general location of the assault, the identity of the perpetrator, and the nature of the acts of penetration," but inconsistent with respect to the defendant's "alleged threat, use of a knife, cutting of [the victim's] arm, and ripping off of [the victim's] clothes." *Id.* at 109-10. We determined that the inconsistencies in *Bakken* "were not minor discrepancies" and did not satisfy the consistency-requirement of rule 801(d)(1)(B). *Id.* Here, in contrast, any discrepancies between K.A.'s statements to her coworker and her trial testimony are minor.

Lastly, we hold that the prior statement was helpful to the trier of fact in evaluating K.A.'s credibility. *Id.* at 109. "[A] prior consistent statement might bolster

10

credibility by showing a fresh complaint, obviating an improper influence or motive, providing a meaningful context, or demonstrating accuracy of memory." *Id.* The district court did not specifically determine that the prior statement would be helpful to the jury. However, appellant's defense rested solely on the claim that the sexual contact between appellant and K.A. was consensual. The coworker's testimony that K.A. was "very upset," that her voice was "shaky," and that she sounded as though she had been crying bolstered K.A.'s credibility because it provided context and demonstrated accuracy of memory. *See, e.g.*, *id.* at 110 (determining that prior statement bolstered witness's credibility where witness demonstrated a "sketchy recollection at trial").

We determine that the three *Bakken* factors are satisfied and the district court did not abuse its discretion by admitting K.A.'s statement to her coworker into evidence.[1]

## II.

Appellant contends that the district court abused its discretion by denying his motion for a downward dispositional departure because substantial and compelling circumstances existed and appellant was a candidate for sex offender treatment and amenable to such treatment.[2] We review a district court's refusal to grant a dispositional departure from the sentencing guidelines for an abuse of discretion, *State v. Bertsch*, 707 N.W.2d 660, 668 (Minn. 2006), and we will affirm the imposition of a presumptive

---

[1] Because we conclude that K.A's statement to her coworker is a prior consistent statement, we do not reach appellant's arguments regarding whether the statement would qualify as a present sense impression or an excited utterance.

[2] We have also considered the arguments in appellant's pro se brief and conclude that they have no legal merit.

11

sentence "when the record shows that the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Johnson*, 831 N.W.2d 917, 925 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013).

The Minnesota Sentencing Guidelines prescribe a sentence or a range for the sentence that is "presumed to be appropriate." *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (citing Minn. Sent. Guidelines 2.D.1). The district court "must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances" distinguishing the case and overcoming the presumption in favor of the presumptive disposition. *Id.* Here, the Minnesota Sentencing Guidelines classify appellant's felony third-degree criminal sexual conduct conviction as a severity-level C offense with a term of commitment ranging from 53 to 74 months and a presumptive commitment of 62 months. Minn. Sent. Guidelines IV (2009). The district court sentenced appellant to 66 months, within the presumptive range.

Appellant argues that substantial and compelling circumstances supporting departure existed because he was willing to attend sex offender treatment, was "a marginally appropriate candidate" for sex offender treatment, was young at the time of the offense, did not have an extensive criminal record, cooperated with the police, and was respectful during court hearings. The sentencing guidelines set forth a "nonexclusive list" of mitigating factors that can justify a dispositional departure. Minn. Sent. Guidelines II.D.2. Minnesota courts may also be guided by several other factors, known as *Trog* factors, to determine if a defendant is particularly amenable to individualized treatment in a probationary setting. *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982).

These factors include "the defendant's age, his prior record, his remorse, his cooperation, his attitude while in court, and the support of [the defendant's] friends and/or family." *Id*. However, Minnesota law is clear that the presence of a mitigating factor "[does] not obligate the court to place defendant on probation or impose a shorter term than the presumptive term." *State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984).

The record shows that the district court carefully considered the factors undergirding appellant's dispositional departure request and determined that they did not favor appellant. The district court acknowledged that appellant was young, had special-needs children, was the sole provider for his family, and had "relatively little criminal history." But the district court also determined that appellant had not displayed genuine remorse or accepted responsibility for his actions, did not cooperate during the proceedings, was unlikely to cooperate with probation, and intentionally defied court orders.

The district court noted that after the jury convicted appellant of all three charges, the district court "gave [appellant] the opportunity to be released" rather than taking him directly into custody pending sentencing. The district court described this as "intentional" because it "wanted to see how [appellant] would do out in the community pending sentencing" in light of the pending departure motion. The district court informed appellant that "how you would have performed pending sentencing potentially would have been helpful to [the court] in determining whether or not to grant the departure motion." The district court found that:

> You destroyed the bracelet, you absconded from custody, and it was law enforcement that had to find you, secure you and bring you back to this county. But for law enforcement, you would still be out in the community avoiding this process. Everything that you just said I don't find sincerity in it at all. You were given an opportunity by me. You were given an opportunity by Community Corrections to impress on them how much you would be willing and able to comply with the expectations of probation, to take responsibility for the offense rather than revictimize the victim . . . . Not only have you not taken responsibility for what you have done, you have deliberately and intentionally revictimized the victim.

The district court concluded that "[t]his departure motion is about whether or not you are particularly suitable to individualize[d] treatment . . . and your motion is denied."

Appellant claims the district court "based its denial of [his] dispositional departure motion mainly on his destruction of the electronic home monitoring device and his failure to show up for his initial sentencing date." But appellant's argument ignores facts in the record. During sentencing, the district court made clear that its decision to deny appellant's departure request was "based on [the] proceedings as a whole, the arguments of the . . . attorneys, the [presentence investigation report] . . . and all of the evaluations and interviews that were conducted that went into the same." Moreover, the presentence investigation report—completed before appellant absconded from custody—supports the district court's decision. The report stated that the "nature of the current offense is significant given the force used to facilitate the assault" and cautioned that appellant "has taken no ownership for his offense and has placed significant blame on the actions of the victim." With regard to appellant's amenability for treatment, the presentence

14

investigation report provided that appellant was "not appropriate for programming" and was only a "marginally appropriate candidate for treatment."

Only the "rare case" merits reversal based on the district court's refusal to depart from the sentencing guidelines. *Johnson*, 831 N.W.2d at 925. This is not a "rare case" compelling this court to vacate and reverse the district court's sentencing order. The district court considered the mitigating factors and the *Trog* factors and concluded that appellant was not entitled to a downward departure from the sentencing guidelines. The record, taken as a whole, supports the district court's decision that there were not "substantial and compelling reason[s]" supporting a dispositional departure in this case, *Soto*, 855 N.W.2d at 314, and we affirm.

**Affirmed.**