**STATE of Minnesota, Respondent,**

v.

**Morgan Michael SCHULZ, Appellant.**

**No. A03–1883.**

Supreme Court of Minnesota.

Feb. 3, 2005.

John Stuart, State Public Defender, Marie Wolf, Assistant Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, John Galus, Assistant Attorney General, St. Paul, MN, Larry Collins, Waseca County Attorney, Waseca County Courthouse, Waseca, MN, for Respondent.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Morgan Michael Schulz was convicted of first-degree felony murder, second-degree intentional murder, and second-degree felony murder, under Minn. Stat. § 609.185(a)(3), Minn.Stat. § 609.19, subd. 1(1), and Minn Stat. § 609.19, subd. 2(1) (2000), respectively. He was acquitted of first-degree premeditated murder and sentenced to life-imprisonment for first-degree felony murder. No sentences were imposed for the second-degree murder convictions. Schulz now appeals from the judgment of conviction, arguing that the admission of evidence concerning his nickname "Kill" was unfairly prejudicial under Minn. R. Evid. 403. We affirm.

On Thursday, August 2, 2001, Schulz, his girlfriend, Megan Striemer, and Erica Boerner drove from Fairmont to Waseca to meet Tyler Janovsky and Janovsky's girlfriend Jamie Siem. These five individuals drove to Rickey Buker's apartment building. Although accounts of the witnesses varied, two individuals testified that Schulz wanted to purchase marijuana from Buker. Striemer testified that she heard Janovsky mention to Schulz that Buker might have a stack of money sitting on a table in his apartment (Buker had won a total of $200, paid in $1 bills, at bingo on the nights of July 25 and August 1). Janovsky noticed the stack of cash at Buker's apartment during a social visit on July 29.

Schulz entered Buker's apartment building alone. After approximately a half hour, wondering why Schulz was taking so long to return, Boerner and Striemer went into the apartment building and knocked on Buker's door. Buker answered, but according to Boerner's testimony, told them that Schulz was not there. After waiting a while longer in the car, Boerner, Striemer, Janovsky and Siem began driving around Waseca looking for Schulz. They found Schulz about a half hour later. Boerner testified that Schulz's hand was bleeding when he got back in the car.

Over the course of the next few hours, Schulz disclosed possession of a film canister containing a quantity of marijuana similar to a film canister previously used by Buker for this purpose, a pink metallic marijuana pipe resembling Buker's pipe, and a "bunch" of one dollar bills. Siem and Janovsky stayed with Schulz that evening, watching movies and drinking. Siem testified that as the evening progressed, Schulz began making admissions. Schulz told Siem and Janovsky that, after arriving at Buker's apartment, he had smoked marijuana at the kitchen table with Buker. Schulz then stated he went into the bath-

room and retrieved a tie from a bathrobe. He then went back to Buker and wrapped the bathrobe tie around Buker's neck, demanding to know where the money was. When Buker said he had none, Schulz choked him until Buker fell to the ground. Schulz claimed that Buker attempted to get up, but Schulz punched him. Janovsky also testified that Schulz told him that he had tied Buker up with a piece from a bathrobe, punched him, and knocked him out.

On August 3, a regular marijuana customer went to Buker's apartment seeking to purchase marijuana. After several previous attempts, the customer knocked on the apartment door, opened the unlocked door, entered, and found Buker lying dead on the floor. When police arrived on the scene, they found Buker with a bathrobe tie wrapped twice around his neck and tied with a half-hitch knot. There was blood on the tie. A forensic pathologist from the Ramsey County Medical Examiner's office determined the cause of death to be asphyxia due to ligature strangulation. The forensic pathologist testified that a fair amount of force was used to strangle Buker, and that the attacker probably strangled him for at least thirty seconds and possibly up to a couple of minutes. The examiner also observed signs of blunt trauma consistent with injury sustained from a human fist.

Before his arrest, Schulz made further incriminating admissions to a number of persons, describing his robbery of and assault on Buker. Two of these persons reported these admissions to police. Several of these persons testified at Schulz's trial, but no witness testified that Schulz seriously admitted to killing Buker.

On about August 6, Schulz telephoned a friend incarcerated at the Martin County jail and left a voicemail message. On the recording, Schulz said, "Man, it's Kill. Re-member that robbery that I was talkin' about? You know, where shit just gets crazy. Yeah, Kill lived up to his name. Ha!" Schulz also has a tattoo of the word "Kill" on his stomach. Schulz was arrested on August 9, 2001.

Prior to trial, the state sought the permission of the district court to introduce the message Schulz left on the Martin County Jail voicemail system. In order to provide context and explain the voicemail message, the state also sought to introduce a photograph of a tattoo on appellant's stomach of the word "Kill." The defense objected, arguing that the evidence was extremely prejudicial, and was essentially character evidence. The district court admitted the evidence. Schulz was convicted.

The single issue on appeal is whether the district court abused its discretion in allowing the introduction of the voicemail message and the photograph of the "Kill" tattoo.

I

Rulings concerning the admissibility of evidence under Minn. R. Evid. 403 are within the discretion of the district court, and will only be reversed for a clear abuse of that discretion. *State v. Ashby,* 567 N.W.2d 21, 25 (Minn.1997). The district court has a wide range of discretion in determining the relevancy of evidence. *State v. Swain,* 269 N.W.2d 707, 714 (Minn.1978). Further, on direct appeal, we must find actual prejudice to the defendant's case in order to reverse the district court and provide relief. *See State v. Ebert,* 346 N.W.2d 350, 351 (Minn.1984) (holding that even when evidence is admitted erroneously, a reversal is not required unless the evidence actually prejudiced the defense).

Schulz contends that the probative value of the taped voicemail message and the photograph of the tattoo is outweighed by the danger of unfair prejudice and by the consideration of needless presentation of cumulative evidence.

Minn. R. Evid. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The rule favors admission of relevant evidence, as the probative value of the evidence must be "substantially" outweighed by prejudice, confusion of the issues, and the other dangers listed in the rule. *See* Minn. R. Evid. 403.

 We begin by analyzing the probative value of the disputed evidence. Evidence is relevant and has probative value when it, in some degree, advances the inquiry. *State v. Carlson*, 268 N.W.2d 553, 559 (Minn.1978). A fact is relevant if, when taken alone or in connection of other facts, warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question. *State v. Upson*, 162 Minn. 9, 12–13, 201 N.W. 913, 914 (1925); *State v. Lee*, 282 N.W.2d 896, 901 (Minn.1979) ("Any evidence that logically tends to prove or disprove a material fact in issue is relevant."). The convincing power of that inference is for the jury to determine. *Upson*, 162 Minn. at 12–13, 201 N.W. at 914. There is no question that the voicemail evidence is probative of a material fact—it is an implied admission of guilt by the appellant, and directly advances the inquiry in forceful way.

 The photograph of the tattoo is relevant and has probative value because it helps to identify appellant as the individual whose voice is heard on the tape. Photographs are admissible whenever they "accurately portray anything which it is competent for a witness to describe in words" and are not rendered inadmissible merely because they "incidentally tend to arouse passion or prejudice." *State v. DeZeler*, 230 Minn. 39, 46, 41 N.W.2d 313, 319 (1950), *reh'g denied*, (Minn. March 6, 1950) (emphasis omitted). When a photograph is not misleading and is properly illustrative, the rule is liberally construed in favor of admission of the disputed evidence; the decision to admit the evidence is within the broad discretion of the district court. *See State v. Dame*, 670 N.W.2d 261, 264 (Minn. 2003). Here, the jury may properly and logically infer a connection between the photograph and the voicemail evidence. A photograph of an identifying mark on the defendant's body is identification evidence of a different kind and character than the testimony that was introduced by witnesses, and has direct probative force.

 The district court did not abuse its discretion when it found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Unfair prejudice under rule 403 is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage. *State v. Cermak*, 365 N.W.2d 243, 247 n. 2 (Minn.1985) (quoting 22 Charles A. Wright Kenneth W. Graham, *Federal Practice and Procedure–Evidence* § 5215 at 274–75 (1978)); *State v. Axford*, 417 N.W.2d 88, 92 (Minn.1987), *reh'g denied* (Minn. Jan. 15, 1988). Even highly damaging evidence is nonetheless admissible when it is relevant and highly probative of a material issue of fact. *State v. Yang*, 644 N.W.2d 808, 817 (Minn.2002). Evidence that is probative, though it may

arouse the passions of the jury, will still be admitted unless the tendency of the evidence to persuade by illegitimate means overwhelms its legitimate probative force. *See, e.g., Cermak,* 365 N.W.2d at 246–47 (affirming the admission of photographs of child sexual abuse when the pictures significantly strengthened the states case against the defendant).

Here, while it is clear the voice mail message had a devastating impact on the defendant's case, principally because a confession recorded in the defendant's own voice is highly incriminating, there is no support in the record for the assertion by Schulz that introduction of such a confession is evidence giving one party an unfair advantage.

The photograph, on the other hand, arguably carries a slightly greater risk of unfair prejudice than the voicemail recording, but we conclude that the slightly greater risk of prejudice does not "substantially" outweigh the probative value of the photograph to the extent that admitting the evidence was an abuse of the district court's discretion. The photograph had probative value because it established a link between the defendant's nickname and the defendant and while it may have aroused emotions not favorable to the defendant, it did not constitute persuasion by illegitimate means. *See State v. Ferguson,* 581 N.W.2d 824, 834–35 (Minn.1998), *reh'g denied* (Minn. Aug. 3, 1998) (holding that while gang graffiti photographs and police testimony as to its meaning may have been highly prejudicial, both were admissible because they were highly probative of motive).

## II

Schulz next contends that the voicemail message and photograph constitute needless presentation of cumulative evidence, and that therefore the district court abused its discretion by admitting them. Schulz argues that because alternative evidence that does not carry a danger of prejudice was admitted, the marginal probative value of evidence that carries even a small danger of prejudice is slight or nonexistent. *See United States v. Layton,* 767 F.2d 549, 556 (9th Cir.1985). This contention does not apply here, however, because the evidence at issue is probative of material facts in ways unique and distinct from the other evidence in the case. The voicemail evidence is uniquely probative because, despite considerable damaging testimony heard at trial, no witness testified to a genuine admission of guilt on the part of Schulz. Only in the voicemail message does the appellant himself imply that he actually killed Rickey Buker. Moreover, the witness testimony regarding Schulz's admissions was subject to impeachment on cross-examination, whereas the voicemail is an admission in the defendant's own voice, and was not subject to impeachment. Furthermore, a defendant's tone of voice and inflection is evidence the jury can use to form an impression of the defendant's state of mind after the crime, and give the jury some clue as to his intent. The photograph confirms the identity of the confessor, corroborating other evidence as to Schulz's nickname.

Rulings on the admissibility of evidence, including whether evidence is improperly cumulative, are committed to the sound discretion of the district court. *See, e.g., State v. Martin,* 614 N.W.2d 214, 225 (Minn.2000); *State v. Olkon,* 299 N.W.2d 89, 101 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981) (holding that rulings under rule 403 are committed to the sound discretion of the district court); *Colby v. Gibbons,* 276 N.W.2d 170, 175 (Minn.1979), *reh'g denied* (Minn. Mar. 13, 1979); *Hiedeman v. Hiedeman,* 290 Minn. 210, 217, 187 N.W.2d

119, 124 (1971). Here, we conclude that the district court did not abuse its discretion in admitting the alleged evidence because of its cumulative nature when, at the very worst, the evidence was only marginally repetitive and it was highly probative.

Because the decision to admit evidence against a claim that its probative value is substantially outweighed by the danger of unfair prejudice is within the discretion of the district court, and because the district court did not abuse its discretion, we affirm.

Affirmed.