*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1119**

State of Minnesota,
Respondent,

vs.

Malcolm Todey Cooper,
Appellant.

**Filed July 11, 2016
Affirmed
Peterson, Judge**

Stearns County District Court
File No. 73-CR-14-8196

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

        In this appeal from convictions of drive-by shooting, second-degree assault with a dangerous weapon, and being a prohibited person in possession of a firearm, appellant argues that the district court erred by admitting as evidence (1) a statement that he made to

a police officer before he was advised of his *Miranda* rights; and (2) testimony that, two weeks before the drive-by-shooting incident, police stopped appellant and another person in the same car that the two were stopped in following the drive-by-shooting incident. We affirm.

## FACTS

A.A. has known appellant Malcolm Todey Cooper since elementary school. While outside in her yard with her baby daughter and some relatives and friends, A.A. saw appellant drive by in a car with his girlfriend. Appellant "was just staring," which caused A.A. to wonder what he was looking at. Later, A.A. was at the end of her driveway talking with D.J. and J.J. A.A. "heard and . . . felt gunshots." She turned around and saw appellant holding his hand out the window of a car and shooting a gun. Appellant was alone in the car. Appellant was just a few feet away when A.A. saw him, and A.A. was certain that the shooter was appellant.

A.A. called 911 right away. She identified appellant as the shooter and described the car to the 911 dispatcher as a blue Alero, although she had to ask others about the type of car because she is not knowledgeable about car makes and models. St. Cloud police officers were dispatched to the scene at 12:58 p.m. A.A. was lying in the grass and had minor injuries on the backs of her calves when the police arrived. St. Cloud Police Officer Tara Vargason described A.A. as "hysterical," "speaking very fast," and "saying over and over and over what had happened."

At about 5:00 p.m., Sartell Police Sergeant Wayne Schreiner stopped a blue Alero because he knew that the St. Cloud Police Department was attempting to locate it.

2

Schreiner and his partner approached the car and ordered the driver, who was B.M., and the passenger, who was appellant, to get out of the car, step back to the squad car, and get on their knees. B.M. and appellant were handcuffed and placed in separate squad cars.

When Schreiner went to his squad car to place his duty bag inside, appellant asked him what was going on. Schreiner told appellant that he would be with him in a minute. About three or four minutes later, Schreiner sat in the front seat of the squad car and introduced himself to appellant. Schreiner explained that the St. Cloud police had been looking for the vehicle, were on their way to the scene, and would update appellant about what was going on when they arrived. Appellant said that he had been at his mom's all day and also said something about not understanding how a person and a vehicle could be associated together.

B.M. told police and testified at trial that she and appellant were at his parents' house all day. Appellant's father testified that appellant and B.M. stopped by the house at about 9:00 a.m. He also testified that he and appellant's mother left the house at about 9:30 or 10:00 a.m. and appellant and B.M. left in her car at about the same time. Finally, he testified that he and appellant's mother returned to the house at about 1:00 or 1:15 p.m. and appellant and B.M. showed up a short time later.

St. Cloud Police Officer Daniel McClure testified at trial that, about two weeks before the drive-by shooting, he and another officer had stopped the same blue Alero that was stopped after the shooting. When they made the stop two weeks earlier, appellant and B.M. were in the Alero.

A jury found appellant guilty of three counts of drive-by shooting, three counts of second-degree assault with a dangerous weapon, and one count of being a prohibited person in possession of a firearm. This appeal followed sentencing.

## D E C I S I O N

## I.

Appellant argues that, before he was advised of his *Miranda* rights, he "was subjected to custodial interrogation when he was handcuffed, placed in the backseat of the squad car, and the officer initiated contact with him." Therefore, appellant contends, any statements that he made should have been suppressed.

> The Fifth Amendment to the United States Constitution provides that an accused has the right to be free from compelled self-incrimination. As a safeguard for this right, the United States Supreme Court has held that statements made by a suspect during a "custodial interrogation" are admissible only if the police provided a *Miranda* warning before the statements were made.

*State v. Sterling*, 834 N.W.2d 162, 168 (Minn. 2013); *see* U.S. Const. amend. V.; *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612 (1966). "Thus, a *Miranda* warning is required if a suspect is both in custody and subject to interrogation." *State v. Thompson*, 788 N.W.2d 485, 491 (Minn. 2010).

There is no dispute that appellant was in custody when he was handcuffed and placed in the squad car; the issue is whether he was subjected to interrogation when he told Schreiner that he was at his mom's all day. Appellant argues that Schreiner's conduct of opening the squad-car door and beginning to talk to appellant about what was going to

4

happen were actions that Schreiner should have known were reasonably likely to elicit an incriminating response.

Not all statements made by an arrestee while in custody are the product of interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 299-301, 100 S. Ct. 1682, 1689-90 (1980). "[S]pontaneous, volunteered statement[s] not made in response to interrogation" will not be suppressed as a result of an arrestee not being given a *Miranda* warning. *State v. Hale,* 453 N.W.2d 704, 707 (Minn. 1990) (quotation omitted). Interrogation is express questioning or "any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *State v. Edrozo*, 578 N.W.2d 719, 724 (Minn. 1998) (quotation omitted). "We independently apply the totality-of-the-circumstances test to the facts as found by the [district] court on the issue of the voluntariness of a defendant's statements." *State v. Jackson,* 351 N.W.2d 352, 355 (Minn. 1984).

In *Innis*, two of three officers who were bringing the defendant to the police station commented between themselves that they should continue to search for a weapon because a school for special-needs children was located nearby and a lot of the children ran around in the area. 446 U.S. at 294-95, 100 S. Ct. at 1686-87. The defendant interrupted the officers' conversation and stated "that the officers should turn the car around so he could show them where the gun was located." *Id.* at 295, 100 S. Ct. at 1687. The Supreme Court held:

> The case thus boils down to whether, in the context of a brief conversation, the officers should have known that the [defendant] would suddenly be moved to make a self-

5

incriminating response. Given the fact that the entire conversation appears to have consisted of no more than a few off hand remarks, we cannot say that the officers should have known that it was reasonably likely that [the defendant] would so respond. This is not a case where the police carried on a lengthy harangue in the presence of the suspect. Nor does the record support the [defendant's] contention that, under the circumstances, the officers' comments were particularly "evocative." It is our view, therefore, that the [defendant] was not subjected by the police to words or actions that the police should have known were reasonably likely to elicit an incriminating response from him.

*Id.* at 303, 100 S. Ct. at 1691. The Court explained that "'[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* at 300, 100 S. Ct. at 1689.

Under *Innis*, when appellant asked what was going on, Schreiner's answer that the St. Cloud police had been looking for the vehicle, were on their way to the scene, and would update appellant about what was going on when they arrived was not interrogation. There was no reason why Schreiner should have known that his answer to appellant's question was reasonably likely to elicit an incriminating response from appellant. The district court, therefore, did not err in admitting appellant's statements into evidence.

**II.**

Appellant argues that the district court erred by admitting testimony that he and B.M. were in the blue Alero when police stopped it two weeks before the drive-by shooting. Appellant contends that the testimony served no legitimate purpose, was prejudicial, and attacked his character.

6

McClure testified that, when he and his partner stopped the blue Alero two weeks earlier, B.M. and appellant were in the Alero. Appellant objected to the evidence on relevancy grounds. The district court found that the evidence was relevant, and the testimony was admitted.[1]

On appeal, appellant objects to the evidence as inadmissible evidence of prior bad acts. "An objection must be specific as to the grounds for challenge." *State v. Rodriguez*, 505 N.W.2d 373, 376 (Minn. App. 1993), *review denied* (Minn. Oct. 19, 1993). A defendant does not preserve an objection for appeal if he objects at trial on grounds different from those argued on appeal. *See id.* In his reply brief, appellant argues that the objection was preserved by a motion in limine requesting that the court prohibit "any reference, testimony, or evidence about another crime, wrong, or bad act regarding [appellant]," and, even if this motion did not preserve the objection, this court should review for plain error.

"Plain error affecting a substantial right can be considered . . . on appeal even if it was not brought to the trial court's attention." Minn. R. Crim. P. 31.02. To demonstrate plain error, appellant must show that 1) there was error, 2) that was plain, and 3) that

---

[1] We agree with the district court that the testimony was relevant to show a connection between appellant and a blue Alero, which was the description of the car used in the drive-by shooting that A.A. gave the 911 dispatcher. The testimony showed that appellant was in a blue Alero before the shooting, and other testimony showed that he was in the same blue Alero after the shooting. Together, the testimony supported a logical inference that appellant had access to a blue Alero at the time of the shooting. *See* Minn. R. Evid. 401 (defining relevant evidence); *see also State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005) (stating that evidence is relevant "when taken alone or in connection of other facts, [it] warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question").

affected substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998); *see also State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (explaining burden of proof).

McClure's testimony did not indicate that appellant committed a crime, wrong, or bad act. McClure testified only that, when the Alero was stopped two weeks earlier, it was parked, appellant was sitting in it, and, based on the license plate, the blue Alero stopped two weeks earlier was the same blue Alero that was stopped after the drive-by shooting. McClure did not state why the Alero was stopped. Appellant has not met his burden of showing that admitting McClure's testimony was erroneous and affected substantial rights.

**Affirmed**.