*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1844**

State of Minnesota,
Respondent,

vs.

Charlene Marie Waldron,
Appellant.

**Filed December 26, 2023
Affirmed in part, reversed in part, and remanded
Gaïtas, Judge**

St. Louis County District Court
File No. 69HI-CR-20-39

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kimberly J. Maki, St. Louis County Attorney, Tyler Kenefick, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Kathryn J. Lockwood, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Gaïtas, Judge; and Wheelock, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

Appellant Charlene Marie Waldron challenges her convictions for fourth-degree driving while impaired following a jury trial. She argues that the district court erred in denying her motion to suppress her statements to law enforcement officers on

constitutional grounds, abused its discretion in denying her motion to exclude the statements from evidence at trial under the rules of evidence, and violated Minnesota law by entering two convictions for the same criminal conduct. Because Waldron's statements to police did not implicate her constitutional rights, and the district court did not abuse its discretion in admitting the statements at trial over Waldron's evidentiary objection, we affirm in part. But, because the district court erred in entering two DWI convictions for the same criminal act, we reverse in part and remand for vacation of one conviction.

## FACTS

At 2:00 a.m. on a cold January morning, Waldron approached a house in Hibbing looking for help after a single-car rollover crash. Waldron was injured and smelled of alcohol, and the homeowners summoned emergency assistance. A state trooper was the first emergency worker to arrive. The trooper located the car, which was in a ditch about 40 yards away from the road, and he confirmed that it was unoccupied. Then, the trooper went to the house to meet with Waldron.

Waldron was lying on the entryway floor, bloodied, and crying, and the homeowners were nearby. The trooper called for an ambulance. When the trooper asked Waldron for her name, she did not respond and moaned in pain. The homeowners told the trooper that Waldron had told them her name and had said her boyfriend was the driver. When the trooper asked Waldron what she had been doing at the time of the crash and whether she had been wearing a seatbelt, Waldron said she was not driving and asked about her boyfriend's whereabouts. The trooper radioed for assistance in locating the missing boyfriend.

2

Another officer arrived at the home, and asked Waldron for the name of the boyfriend they should be looking for. This officer asked Waldron whether the boyfriend had been driving. Waldron responded that her boyfriend was not the driver.

The ambulance arrived. As Waldron was being loaded into the ambulance, she became combative with the paramedics and another officer at the scene. The ambulance transported her to the hospital. There, Waldron's blood was drawn pursuant to a search warrant. The blood draw revealed that she had an alcohol concentration of 0.188.

Respondent State of Minnesota charged Waldron with two counts of fourth-degree DWI—one count for driving with an alcohol concentration over the legal limit as measured within two hours of driving and one count for operating a motor vehicle while under the influence of alcohol. Additionally, the state charged Waldron with one count of misdemeanor obstructing legal process based on her combative conduct once the ambulance arrived. After a competency evaluation determined that Waldron was competent at the time of the DWI offenses but not at the time of the obstructing-legal-process offense due to a head injury sustained during the accident, the state dismissed the charge of obstructing legal process.

Before trial, Waldron moved to suppress her statements to the responding law enforcement officers, which were recorded by the responding trooper's dashboard camera.[1]

---

[1] The video from the trooper's dashboard camera showed the front of the house and did not capture any of the events inside the house. But the video captured audio from the trooper's body microphone. The audio from the video recording included the entire interaction between Waldron and law enforcement officers while the responding trooper was inside the house.

She argued that the law enforcement officers violated her constitutional rights by failing to provide her with a *Miranda* warning before questioning her, or alternatively, by causing her to make involuntary statements. The district court denied Waldron's suppression motion, determining that the "rescue doctrine"—an exception to the requirement for a *Miranda* warning—justified the law enforcement officers' questions to Waldron absent a *Miranda* warning.

Waldron's pretrial motion also sought exclusion of her statements from trial under the rules of evidence, asserting that the statements were unfairly prejudicial. The district court did not explicitly address this motion.

Waldron then had a jury trial. The state introduced the recording of Waldron's statements to law enforcement in the house following the car accident. Additionally, the state presented evidence of Waldron's alcohol concentration and testimony from the responding trooper. The responding trooper testified that the car involved in the accident was registered to Waldron. He also testified that he observed just one set of footprints in the snow leading away from the car.

Waldron testified on her own behalf. According to Waldron, she did not consume any alcohol, she began to feel sick after she ate dinner with her boyfriend, and she did not remember driving her car.

The jury found Waldron guilty of both charges, and the district court entered convictions on both counts. The district court sentenced Waldron to 90 days of jail time, stayed for a year, and probation.

Waldron appeals.

**DECISION**

**I.** **The district court did not err by denying Waldron's pretrial motion to suppress her statements on constitutional grounds.**

Waldron first challenges the district court's denial of her pretrial motion to suppress evidence on constitutional grounds. She argues that the district court erred in determining that the "rescue doctrine" allowed the law enforcement officers who responded to the accident to interrogate her. According to Waldron, the officers should have provided her with a *Miranda* warning before asking questions. And even if no *Miranda* warning was required, Waldron contends that her statements were involuntary due to her condition.

When considering a challenge to a district court's pretrial ruling on a motion to suppress evidence, the appellate court reviews factual findings for clear error and legal conclusions de novo. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011).

**A.** **Because Waldron was not subjected to custodial interrogation, no *Miranda* warning was required.**

Before the police can question a suspect in custody, they must provide the suspect with a *Miranda* warning. *State v. Horst*, 880 N.W.2d 24, 30 (Minn. 2016) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). Among other rights, a *Miranda* warning advises a suspect of the privilege against self-incrimination, which is guaranteed by the Fifth Amendment of the United States Constitution. *Miranda*, 384 U.S. at 478-79. To ensure compliance with the requirement for a *Miranda* warning, the United States Supreme Court has held that any statements made during a custodial interrogation when a *Miranda* warning has not been provided must be suppressed. *Id.* at 479.

Here, there is no dispute that the first trooper to arrive at the house, and a second officer who arrived shortly thereafter, asked Waldron some questions. In considering Waldron's suppression motion, however, the district court did not make any explicit findings about whether Waldron was subjected to a custodial interrogation. Instead, the district court determined that an *exception* to the *Miranda* requirement—the rescue doctrine—applied. *See State v. Provost*, 490 N.W.2d 93, 96-97 (Minn. 1992) ("[T]he rescue doctrine is applicable in emergency situations where exigent circumstances may excuse compliance with the *Miranda* rules in instances of overriding need to save human life or to rescue persons whose lives are in danger." (quotation omitted)).

Waldron asks us to conclude that a *Miranda* warning was required and that the district court erred in invoking the exception to *Miranda*. But the state urges us to affirm the district court's denial of Waldron's suppression motion on the alternative ground that Waldron was never subjected to a custodial interrogation and thus no *Miranda* warning was required. Citing *State v. Grunig*, the state notes that it is entitled to raise alternative arguments on appeal to support a district court's decision if the factual record is sufficiently developed for consideration of the alternative theory, the law supports the alternative theory, and a decision on the alternative theory would not expand the relief granted below. 660 N.W.2d 134, 137 (Minn. 2003). The state points out that it argued to the district court that there was no custodial interrogation and developed a factual record that supports this alternative theory. We agree with the state's analysis, and we sustain the district court's

6

denial of Waldron's suppression motion on the alternative ground that there was no custodial interrogation necessitating a *Miranda* warning.

To determine whether an individual was in custody for the purpose of the *Miranda* requirement, a court should consider the surrounding circumstances. *State v. Scruggs*, 822 N.W.2d 631, 637 (Minn. 2012). Factors suggesting that a person was in custody include:

> (1) the police interviewing the suspect at the police station; (2) the suspect being told he or she is a prime suspect in a crime; (3) the police restraining the suspect[']s freedom of movement; (4) the suspect making a significantly incriminating statement; (5) the presence of multiple officers; and (6) a gun pointing at the suspect.

*State v. Vue*, 797 N.W.2d 5, 11 (Minn. 2011) (quotation omitted). And factors suggesting that an individual was not in custody include brief questioning, a nonthreatening environment, an explicit statement by police that the person is not under arrest, and police allowing the person to make phone calls or leave after they gave their statement. *Scruggs*, 822 N.W.2d at 637.

Interrogation is "express questioning or any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response." *State v. Heinonen*, 909 N.W.2d 584, 589 (Minn. 2018) (quotations omitted). A custodial interrogation occurs when "questioning [is] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way," *Miranda*, 384 U.S. at 444, or "if, based on all the surrounding circumstances, a reasonable person under the circumstances would believe

that he or she was in police custody of the degree associated with formal arrest." *Vue*, 797 N.W.2d at 10-11 (quotation omitted); *see also Scruggs*, 822 N.W.2d at 637.

"The issue of whether a suspect is in custody and therefore entitled to a *Miranda* warning presents a mixed question of law and fact qualifying for independent review." *State v. Sterling*, 834 N.W.2d 162, 167 (Minn. 2013). A district court's findings of fact as they relate to the circumstances of the interrogation are reviewed for clear error, but appellate courts conduct "an independent review of the [district] court's determination regarding custody and the need for a *Miranda* warning." *Id.* at 167-68. Considerable, but not unlimited, deference is given to a district court's "fact-specific resolution of such an issue when the proper legal standard is applied." *Id.* at 168.

Waldron does not challenge as clearly erroneous any of the district court's factual findings underlying its implicit determination that there was a custodial interrogation. Based on the district court's undisputed factual findings, we determine, based on our independent review, that there was no custodial interrogation requiring a *Miranda* warning. We reach this conclusion for two reasons.

First, considering the surrounding circumstances, Waldron was not in custody when she was questioned. At the outset of Waldron's encounter with law enforcement—and, indeed, for the majority of that encounter—there was just one law enforcement officer present. The homeowners were also present during the encounter, and they were also interacting with law enforcement. Waldron was not in a police station, jail, or a squad car. She was lying on the floor of a house that she entered on her own initiative. And the responding trooper made clear that medical help had been summoned for Waldron. The

questions posed by law enforcement were not accusatory. Rather, they were open-ended attempts to figure out what had happened and whether there was another injured person outside in the cold. The totality of these circumstances indicates that Waldron was not in custody when she made the statements at issue. *See Vue*, 797 N.W.2d at 11 (instructing district courts to consider the totality of the circumstances in deciding whether an individual is in custody for the purpose of a *Miranda* warning).

Second, there was no interrogation. Police are not required to give a *Miranda* warning when engaging in "general on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." *Miranda*, 384 U.S. at 477. This includes "on-the-scene questioning" of individuals suspected of driving while under the influence. *See Steinberg v. State, Dep't of Pub. Safety*, 357 N.W.2d 413, 416 (Minn. App. 1984) ("[U]pon arriving at the scene of an accident an officer need not give a *Miranda* warning to a person suspected of DWI."); *see also State v. Werner*, 725 N.W.2d 767, 769-71 (Minn. App. 2007) (stating that asking a DWI suspect about alcohol consumption does not constitute an interrogation); *State v. Herem*, 384 N.W.2d 880, 883 (Minn. 1986) (observing that an "officer's subjective intent or . . . belief that defendant was driving under the influence" does not on its own "necessitate a *Miranda* warning"). Here, law enforcement officers asked Waldron general on-the-scene questions after responding to a serious car accident. These questions did not amount to an interrogation.

Because there was no custodial interrogation, no *Miranda* warning was required. And because no *Miranda* warning was required, there was no violation of the *Miranda*

9

requirement. Given this determination, we do not reach the question of whether the rescue exception to the *Miranda* requirement applied.

**B.** **Because the record contains no evidence of police coercion, Waldron's argument that her statements were "involuntary" fails.**

Separate from the *Miranda* requirement, the Due Process Clause of the Fourteenth Amendment of the United States Constitution bars the government from introducing in evidence any statement that was involuntarily given. *State v. Zabawa*, 787 N.W.2d 177, 182 (Minn. 2010); *see also State v. Williams*, 535 N.W.2d 277, 287 (Minn. 1995) (stating that the voluntariness requirement is separate from the *Miranda* requirement). In considering whether a statement was involuntary, "courts inquire whether police conduct, together with other circumstances surrounding the interrogation, was so coercive, so manipulative, and so overpowering as to deprive a defendant of his ability to make an unconstrained and wholly autonomous decision to speak as he did." *State v. Clark*, 738 N.W.2d 316, 333 (Minn. 2007) (quotation omitted). The relevant circumstances surrounding an interrogation include the suspect's age, maturity, intelligence, education, experience, ability to comprehend, lack of or adequacy of warnings, length and legality of detention, nature of interrogation, physical deprivations, and limits on access to family and friends. *See id.* at 332; *State v. Camacho*, 561 N.W.2d 160, 170 (Minn. 1997); *State v. Blom*, 682 N.W.2d 578, 614 (Minn. 2004).

Although Waldron argued to the district court that her statements were involuntary, the district court did not address this issue. On appeal, Waldron does not contend that the district court's failure to address the issue was error. And, generally, we will not make

such a determination in these circumstances.  *See Palladium Holdings, LLC v. Zuni Mortg. Loan Tr. 2006-OA1*, 775 N.W.2d 168, 177-78 (Minn. App. 2009) ("Appellate courts cannot assume a district court erred by failing to address a motion, and silence on a motion is therefore treated as an implicit denial of the motion."), *rev. denied* (Minn. Jan. 27, 2010). Instead, Waldron argues that we should determine, applying de novo review, that her statements were involuntary.

Our standard of review permits us to consider de novo whether Waldron's statements were voluntary.  Appellate courts "review a district court's conclusion as to the voluntariness of a statement de novo to determine whether the state proved voluntariness based on the totality of the circumstances." *Clark*, 738 N.W.2d at 333.  A district court's factual findings bearing on voluntariness are reviewed for clear error. *Id.*

Reviewing the issue de novo, we conclude that the state satisfied its burden of establishing the voluntariness of Waldron's statements.  The record contains no evidence of police coercion.  Instead, the audio recording of the interaction between Waldron and law enforcement officers reveals a routine investigation of an accident involving an injury. "Coercive police activity *is a necessary predicate* to a finding that a confession is involuntary." *Camacho*, 561 N.W.2d at 169 (emphasis added).  Because there was no coercion, Waldron's statements were not involuntary.

Waldron argues that the responding trooper acted coercively by refusing to assist her when she was in obvious pain and by continuing to question her in this situation.  The record does not support this argument.  Although Waldron was apparently in pain, the responding trooper assured her that an ambulance had been summoned and explained that

11

he would not touch her so as not to exacerbate any of her injuries. This conduct is not consistent with coercion.

Waldron also argues that her statements were involuntary due to her mental condition. She points out that a subsequent competency evaluation deemed her incapable of appreciating the nature of her actions following the car accident because she sustained a head injury. However, the United States Supreme Court has held that "a defendant's mental condition, by itself and apart from its relation to official coercion," does not "dispose of the inquiry into constitutional 'voluntariness,'" and absent coercive police activity "causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986); *see also State v. Mills*, 562 N.W.2d 276, 283 (Minn. 1997) ("The fact that a defendant suffers from a mental deficiency is, alone, insufficient to render a statement . . . involuntary. Instead, coercive police activity is a predicate to a finding that a statement . . . was made involuntarily." (citation omitted)), *overruled by State v. McCoy*, 682 N.W.2d 153 (Minn. 2004) (overruling *Mills* on grounds unrelated to voluntariness). Waldron's mental condition may have made her more susceptible to police coercion. But because there was no police coercion, we cannot conclude that her statements were involuntary. Accordingly, we reject her argument that her statements should have been suppressed because they were not voluntary.

**II.** **The district court did not abuse its discretion by allowing the state to introduce Waldron's statements in evidence at trial.**

As an alternative to her constitutional challenges, Waldron argues that the district court abused its discretion in allowing the state to introduce the recording of her statements at trial because they were more prejudicial than probative. She contends that the district court should have excluded the statements under Minnesota Rule of Evidence 403, as she requested in her pretrial motion.

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Relevant evidence "has probative value when it, in some degree, advances the inquiry." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). Evidence is unfairly prejudicial under rule 403 when it is "not merely damaging evidence [or] even severely damaging evidence," but when it "persuades by illegitimate means, giving one party an unfair advantage." *Id.*

"Evidentiary rulings rest within the sound discretion of the district court, and [appellate courts] will not reverse an evidentiary ruling absent a clear abuse of discretion." *State v. Ali*, 855 N.W.2d 235, 249 (Minn. 2014). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (quotation omitted).

Waldron argues her statements were inadmissible under rule 403 because they were "the unreliable ramblings of an incompetent person, . . . had very low probative value[,]

and were extremely prejudicial, and confusing to the jury." We disagree with this analysis. The statements were quite probative of the issues at trial—whether Waldron drove the car and whether she was under the influence of alcohol when she drove. And although the statements were damaging to the defense, Waldron does not explain how they were *unfairly* prejudicial—how they "persuade[d] by illegitimate means, giving [the state] an unfair advantage." *See Schulz*, 691 N.W.2d at 478. Because the statements were probative, and Waldron fails to identify any unfair prejudice, we discern no abuse of discretion in the district court's decision to admit the statements in evidence at trial.

III. **The district court erred by convicting Waldron of two DWI offenses based on the same behavioral incident.**

Waldron argues that the district court erred in entering convictions for both counts of DWI—and the state agrees. Under Minnesota law, a criminal defendant "may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1 (2022). The supreme court has interpreted this section "to bar[] multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v. Jackson*, 363 N.W.2d 758, 760 (Minn. 1985). When a defendant is convicted of more than one charge for a single-behavioral incident the district court must "adjudicate formally and impose sentence on one count only." *State v. LaTourelle*, 343 N.W.2d 277, 284 (Minn. 1984). Whether a conviction violates section 609.04 is a legal question that an appellate court reviews de novo. *State v. Bonkowske*, 957 N.W.2d 437, 443 (Minn. App. 2021).

At sentencing, the district court stated that it was entering convictions for both DWI offenses—one count for driving with an alcohol concentration over the legal limit as measured within two hours of driving and one count for operating a motor vehicle while under the influence of alcohol.[2] Because both of these offenses arose from the same behavioral incident and involved the same conduct, this was error. We therefore reverse and remand to the district court to vacate one of the two convictions.

**Affirmed in part, reversed in part, and remanded.**

---

[2] Generally, appellate courts "look to the official judgment of conviction in the district court file as conclusive evidence of whether an offense has been formally adjudicated." *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007) (quotations omitted). Here, no warrant of commitment was filed, so we consider the district court's oral pronouncement at sentencing as evidence. *See State v. Staloch*, 643 N.W.2d 329, 332 (Minn. App. 2002).