*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0434**

State of Minnesota,
Respondent,

vs.

Shane Joseph Gross,
Appellant.

**Filed February 23, 2026
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-23-26113

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Matthew D. Hough, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ede, Presiding Judge; Ross, Judge; and Johnson, Judge.

**NONPRECEDENTIAL OPINION**

**ROSS**, Judge

While Shane Gross waited in jail to be tried on charges of drive-by shooting, ineligible possession of a firearm, and three counts of second-degree assault with a dangerous weapon, he made calls on a recorded telephone line asking a woman to "hide" an unnamed item and complained that "Twin" and Twin's "bitch" were cooperating with

police. The prosecutor told the jury during closing arguments that "Twin" and "his bitch" were the victims in the car that had been chased, rammed by, and repeatedly shot at from the two cars that Gross and his alleged acquaintance occupied. The prosecutor also argued that the evidence established that the gunshot victim testified truthfully. In this appeal from his conviction on all counts, Gross argues that the district court abused its discretion by admitting evidence of the jail calls and that the prosecutor's closing argument constituted misconduct. Because the district court did not abuse its discretion by admitting evidence of the calls and the one remark that constituted prosecutorial misconduct certainly had no effect on the verdict, we affirm.

## FACTS

The mayhem initiating this case occurred in south Minneapolis on a November 2023 afternoon. A married couple, whom we will call "Gary" and "Sarah" (names we have randomly chosen in the interest of protecting their privacy), were traveling in their car with a friend on Franklin Avenue. Gary navigated eventually onto 26th Street, when a white Ford Fusion suddenly smashed into the rear of their car. Gary quickly turned north onto Park Avenue, and a chase began.

Gary raced north on Park Avenue. The Fusion pursued closely behind. It repeatedly rammed Gary's car. And as Gary's car entered the intersection of Park and Franklin Avenue, a grey Volkswagen Jetta slammed into it, T-boning the passenger side of Gary's car and joining the chase. Gary continued to flee northbound. The Fusion chased from behind while the Jetta was positioned immediately along his passenger side where Sarah

was sitting in the front seat. Sarah looked from her window at the Jetta and from about five feet away recognized its driver, an acquaintance—Shane Gross.

The chase continued wildly northward with the Fusion just behind and the Jetta immediately to the right of Gary's car. That's when Sarah heard about five gunshots ring out from the Jetta. Some bullets penetrated their fleeing car through its doors. Another shattered a passenger window. And one round struck Sarah's hip. She told Gary that she was shot, and Gary turned quickly toward Interstate 94 to escape. The Fusion and Jetta gave way. Gary stayed on I-94 until he reached United Hospital, from which emergency-room staff rushed Sarah to Regions Hospital for urgent treatment. The bullet remains lodged near Sarah's pelvis.

Minneapolis police investigators interviewed Sarah and Gary at the hospital. Sarah initially denied knowing who shot her, but Gary interjected, "Tell the truth." Sarah then told police that Shane Gross was the driver of the Jetta and the man who shot her.

The state charged Gross with one count of drive-by shooting in violation of Minnesota Statutes section 609.66, subdivision 1e(a)(2) (2022), one count of ineligible possession of a firearm in violation of Minnesota Statutes section 624.713, subdivision 1(2) (Supp. 2023), and three counts of second-degree assault with a dangerous weapon in violation of Minnesota Statutes section 609.222, subdivision 1 (2022).

During the ensuing trial, the district court admitted recorded portions of six pretrial telephone calls Gross made from jail, all of which arguably implicated him in the shooting. Two of them reference Gross's desire that something become hidden. Others seem to

reflect Gross's attempt to coach the listener on what to say to investigators and to express his anger that Sarah and Gary were cooperating in the investigation against him.

In two of the calls, Gross directed one woman to have another woman "hide" something. Police had never found the gun fired from the Jetta. Almost immediately after the first of those calls began, Gross spoke rapidly, saying, "I need you to call—I need you to get in touch with [a named woman] I need to get her number." After the first woman said she had spoken with the named woman "yesterday," Gross spoke excitedly, "You got her number? You get her number? You got her number?" He continued, "Tell her I need to, um, I need to tell her to hide that thing out there and shit just in case . . . they took my keys and they had a warrant for my car . . . they had a warrant for my car and they had a warrant for me." Gross asked the first woman if the assault charges against him involved a weapon, and when she said they did not, he replied, "That's because they don't have nothing." In the second of those calls, the named woman came on the line and Gross asked her, "Did you do that what I said?" After the woman said, "Yup I did it," Gross clarified, "You hid it?" The woman said, "Yeah," and Gross added instructions to her: "Don't get rid of it, but hide it."

Two other jail-call recordings captured Gross reacting to his criminal charges and complaining about Gary and Sarah. The criminal charges referred to Gary and Sarah without naming them. The complaint dubbed Gary as "Victim 2." It referenced Sarah, stating, "Victim 1 was hit by one round in her lower back and was taken to the hospital." And it revealed Sarah's cooperation with police, stating, "Victim 1 recognized the driver of the grey Volkswagen as SHANE JOSEPH GROSS . . . Defendant herein." Gross angrily

4

declared in the recorded call, "I just got my charge papers. Why is the bitch-ass bitch and the bitch-ass [expletive male] snitching on me?" He said, "They charged me for each [of the three people] . . . in the car." The first woman asked Gross who was in the car, and Gross indicated that he had not known that anyone other than Gary and Sarah were in the car, adding, "I guess they . . . picked up a person too." In a related recording that also focused on the criminal complaint, Gross said, "They both snitching on me. I'm reading the paper. It says, 'Victim 1 was hit by one round in her lower back and was taken to the hospital.'" He added, "I'm reading it right now. Both of them doing it. They both snitching. They both saying it. They both gotta come to court." The woman asked, "Twin and who?" Gross answered, "And his bitch."

Other recorded jail calls capture Gross saying, "I don't know if you remember or not . . . listen to my drift, okay?" He made multiple statements directing a woman to "remember" certain facts about his whereabouts and other circumstances that, if believed, could help fabricate an alibi defense.

Sarah testified at trial, recounting the incident summarized above and identifying Gross as the Jetta's driver and the shooter. She pointed out Gary's car and the two chasing cars in video footage of the chase captured on a security camera. She also testified that Gross called Gary after the shooting and threatened to kill them if they cooperated with police. Multiple investigators also testified that Sarah's story remained consistent through a series of interviews and that Gross admitted to them that he drives a Jetta. The investigators shared photographic evidence of Gary's and Gross's damaged cars consistent

with Sarah's testimony. They testified that they found .40-caliber discharged cartridge casings in Gross's Jetta but had never located a gun.

The prosecutor relied on Gross's jail calls during his closing argument, contending that Gross's directing others to hide "that thing" explains why the investigators never recovered the firearm that had been fired from the Jetta. He also argued "Twin" and "his bitch" were Gary and Sarah. The prosecutor maintained too that Sarah's testimony was credible, stating, "She told you she was advised to tell the truth, and so she did," referring to Gary's instruction to cooperate with the police at the hospital. He added, "I show[ed] that exhibit to show that she told the truth," after he replayed the surveillance footage.

The jury found Gross guilty on all counts. The district court found that Gross qualified as a dangerous offender and departed upwardly from the presumptive sentence under the sentencing guidelines, sentencing him to serve 144 months in prison.

Gross appeals.

## DECISION

Gross offers two principal arguments on appeal to challenge his conviction. He argues first that the district court improperly admitted evidence of the jail calls in which he gave instructions to hide "that thing." He argues second that the prosecutor committed misconduct in his closing argument by vouching for Sarah's credibility and by identifying Gary and Sarah as "Twin" and "his bitch" when Gross had not mentioned the "snitches" by name. Gross adds a third argument, which is that the cumulative effect of these errors warrants a new trial even if they individually do not. The arguments fail.

# I

We first address Gross's contention that the district court erroneously admitted evidence of the jail calls in which he directed the hiding of "that thing." We review preserved objections to a district court's evidentiary rulings for an abuse of discretion and will only reverse when an erroneous evidentiary ruling prejudiced the appellant's defense. *State v. Nunn*, 561 N.W.2d 902, 906–07 (Minn. 1997). Gross argues specifically that the district court abused its discretion by admitting evidence of the jail calls about hiding an object because the evidence is not relevant and risks unfair prejudice by inviting the jury to speculate about what the "thing" is. For the following reasons, we conclude that the evidence is neither irrelevant nor unfairly prejudicial.

Evidence of Gross's jailhouse-directed hiding of an object is certainly relevant. Evidence is relevant if it tends to make a fact of consequence more or less probable. Minn. R. Evid. 401. This includes evidence supporting logical inferences about a triable factual issue. *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). The challenged call recordings were relevant for at least two reasons. The first reason is that the recordings could help the jury understand why police did not find a firearm inside Gross's Jetta when they searched it nearly a week after the shooting, despite the evidence that the shooter had fired at Gary and Sarah from inside the Jetta. *See State v. Hallmark*, 927 N.W.2d 281, 305 (Minn. 2019) (explaining that evidence is relevant when it helps explain the police investigation). The second reason is that a jailed defendant's cryptically directing a person to hide any object during the course of his criminal investigation implies the defendant's attempt to conceal or suppress evidence, which is in turn relevant evidence of his consciousness of guilt. *State*

7

*v. Mayhorn*, 720 N.W.2d 776, 783–84 (Minn. 2006) (explaining that evidence demonstrative of a defendant's consciousness of guilt is relevant). The low bar for relevancy is easily met here.

This does not end our inquiry. Although relevant evidence is generally admissible, it should be excluded if its probative value is substantially outweighed by its risk of unfair prejudice. Minn. R. Evid. 402, 403. We recognize the concern that a risk of unfair prejudice might arise from jurors speculating about what "that thing" is and then punishing Gross merely for directing another to hide it. But there's a difference between preventing unfounded speculation and allowing reasoned inferences. The jurors heard the calls with Gross's barely shrouded and repeated efforts to urge a witness to "remember" (as in wholly fabricate) factual details that placed him somewhere other than behind the wheel of the Jetta during the chase and shooting. They heard him refer to those identified in the complaint as having "snitched" on (as in truthfully reported) him for the shooting. And they heard him answer the first woman's question about who had been in Gary's car by referencing Gary and Sarah rather than indicating that he did not know because he was not there. We evaluate risk of unfair prejudice in the context of the state's entire presentation of the evidence. *See State v. Barajas*, 817 N.W.2d 204, 221–22 (Minn. App. 2012), *rev. denied* (Minn. Oct. 16, 2012). And in this case, we see no risk that the jury would draw any *unreasonable* inferences about what Gross wanted to hide or that the jurors' inferring that the "thing" was in fact a gun would result in any *unfair* prejudice to Gross's defense.

## II

We next address Gross's argument that the prosecutor committed two acts of misconduct in his closing argument. We review unobjected-to prosecutorial misconduct by applying a modified plain-error test. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Under that test, if the appellant identifies an error that is plain, the burden shifts to the state to prove that the error did not affect the defendant's substantial rights. *Id.* If the state fails to meet that burden, we correct the error if doing so is necessary to ensure fairness and judicial integrity. *Id.* As applied to the two incidents of alleged misconduct in this case, the test ends at the first and third steps, respectively, because Gross identifies no error.

Gross contends specifically that the prosecutor improperly argued based on facts not in evidence that Gross was referring to Sarah and Gary during his jail calls when he railed angrily against "Twin" and "his bitch." The contention fails because prosecutors may argue to jurors based on reasoned inferences from the evidence. *State v. Munt*, 831 N.W.2d 569, 587 (Minn. 2013). And the fact that Gross was referring to Gary and Sarah when he complained that "Twin" and "his bitch" had "snitched" on him is not just *a* reasonable inference, it seems to us to be the only reasonable inference from the admitted evidence. The criminal complaint referred to "Victim 2" as a man and to "Victim 1" as that man's wife who had been shot and who identified Gross as the shooter. And Gross's jailhouse recordings demonstrate that, as he was reading the criminal complaint, he was accusing Victim 1 and Victim 2 of snitching. This belies Gross's argument that the jury would have needed the criminal complaint against Gross, which was not in evidence, to draw this

9

inference. The prosecutor did not argue facts not in evidence by making the challenged argument during his closing.

Gross also contends that the prosecutor improperly vouched for Sarah's truthfulness in stating that she "was advised to tell the truth, and so she did," and that he presented the jury "that exhibit to show that she told the truth[.]" We agree that this argument was error. Prosecutors may argue for a witness's credibility in closing. *State v. Martin*, 773 N.W.2d 89, 106 (Minn. 2009). But prosecutors may not personally vouch for a witness's credibility. *Id.* Declaring that Sarah "was advised to tell the truth, and so she did" was error because the unequivocal statement that she "did" tell the truth consists only of the prosecutor's opinion about her truthfulness. *See State v. Hobbs*, 713 N.W.2d 884, 889 (Minn. App. 2006) (holding that a prosecutor stating that a witness "told you the truth" qualifies as impermissible vouching), *remanded mem.* (Minn. Aug. 15, 2006) (concerning other grounds), *aff'd* (Minn. App. May 1, 2007), *rev. denied* (Minn. July 17, 2007). This conduct is prosecutorial misconduct, and the error is plain. *See Ramey*, 721 N.W.2d at 302; *State v. Lilienthal*, 889 N.W.2d 780, 785 (Minn. 2017) (explaining that an error is plain if it violates established caselaw). This holding shifts the burden to the state to establish that the error was not prejudicial.

The state has met this burden. The strength of the state's case against Gross was overwhelming, the prosecutor's misconduct was minimal, and Gross rebutted the misconduct directly. *See State v. Portillo*, 998 N.W.2d 242, 251–52 (Minn. 2023); *State v. Hill*, 801 N.W.2d 646, 654–55 (Minn. 2011). The state's evidence against Gross made a very strong case for his guilt. Sarah, who was acquainted with Gross, saw him and

positively identified him as the Jetta's driver and her shooter. Gross angrily referred to Sarah and Gary as snitches, not as liars. Sarah reported to jurors that Gross had called and threatened their lives if they cooperated with the investigation. Police found bullet casings in Gross's car, which matched Sarah's description and which jurors saw on video chasing Gary's car. In a panicky deportment, Gross immediately sought to know how to contact someone whom he wanted to urge to hide an object, and he followed up from jail to assure himself that she had hidden the thing as he had instructed. This and other evidence presented to the jury is more than enough for us to conclude that the state presented strong evidence of Gross's guilt. *See State v. Maye*, 6 N.W.3d 103, 111–12 (Minn. 2024) (recognizing strong evidence of guilt in a single eyewitness's testimony consistent with a police interview, photos showing damage to a car consistent with eyewitness's account, and the defendant's deceit during the investigation). This factor weighs heavily against reversing.

The misconduct was also not pervasive. The supreme court has concluded that misconduct comprising one page of a 28-page closing argument was not pervasive. *State v. Segura*, 2 N.W.3d 142, 162–63 (Minn. 2024). By comparison, the prosecutor's slightly vouching statement was only part of a two-line sentence in the state's 29-page closing argument and rebuttal. We add that a defendant's having the opportunity to address a prosecutor's improper closing statements mitigates prejudice, *State v. Peltier*, 874 N.W.2d 792, 806 (Minn. 2016), and in this case Gross not only had the rebuttal opportunity, he availed himself of it. His closing included arguments contesting the misconduct and focused substantially on undermining Sarah's credibility. Considering the entire trial and

exploring the gravity of the prosecutor's statement in that context, we hold that the erroneous statement did not affect Gross's substantial rights.

### III

All that remains is Gross's argument that the cumulative effect of the contested trial's errors requires reversal. *See State v. Penkaty*, 708 N.W.2d 185, 200 (Minn. 2006) (explaining the cumulative-error doctrine). But we have found only one error, and we have already considered its effect and rated it inconsequential.

**Affirmed.**